JOHN NOLDE V. JAMES A. GRAY.*

FILED MARCH 8, 1905.   No. 13,740.

1. **Land Contract: BREACH: MEASURE OF DAMAGES.** In an action by a vendee to recover damages for breach of a contract to convey land, the measure of damages is the difference between the price agreed to be paid and the value of the land when the breach occurred with interest.

2. **Grounds of Recovery.** To recover such a measure of damages, the vendee must either be evicted from the premises or rescind his contract because of the failure or inability of the vendor to perform, and thus place the vendor *in statu quo.*

3. **Evidence examined,** and *held* not sufficient to sustain the judgment of the trial court.

ERROR to the district court for Clay county: GEORGE W. STUBBS, JUDGE. *Reversed.*

*L. J. Capps* and *Charles H. Sloan,* for plaintiff in error.

*L. B. Stiner* and *Tibbets Bros. & Morey, contra.*

OLDHAM, C.

This was an action instituted by James A. Gray, plaintiff in the court below, against John Nolde, defendant, for the breach of a written contract for the sale of a quarter section of land lying in Clay county. The petition alleged

* Rehearing denied. See opinion, p. 378, *post.*

that on the 6th day of May, 1901, and prior thereto, the
defendant was the owner in fee simple of the land (de-
scribing it) ; that on said day plaintiff and defendant en-
tered into a contract in writing for the sale and purchase
of said premises, by the terms of which plaintiff was to
pay $1,000 in cash and $5,000 at his option, with interest
at 6 per cent. until such payment was made; that in con-
formity with said agreement he entered into and still re-
tains possession of the land in controversy. That on the
4th day of February, 1903, in pursuance of said contract,
he tendered the defendant $5,000 and interest, the amount
then due on said contract, and demanded a deed, which
defendant refused and neglected to make. The petition al-
leged no facts on which any claim of special damages could
be predicated, but it is alleged that the value of the land
had increased between the time of the contract and the
time in which the deed should have been made from $6,000
to $8,000, and that because of such increase the defendant
refused to comply with the conditions of the contract and
execute and deliver a deed to plaintiff. Plaintiff prayed
judgment against the defendant for $8,000, with interest
thereon from February 6, 1903, and costs of suit. The
defendant filed an answer to this petition which, in sub-
stance, admitted the execution of the written contract, but
alleged the signature thereto had been procured by fraud,
and denied each and every other allegation in the petition,
and, by way of counterclaim, asked for a judgment for the
rents and profits of the land during the time of its occu-
pancy by plaintiff. Plaintiff filed a reply practically in
the nature of a general denial. On issues thus joined there
was a trial to a jury in the court below, a judgment for
plaintiff for $2,969.63, and defendant brings error to this
court.

The facts underlying the controversy are that in 1901 a
written contract for the sale of the lands in controversy
was entered into between plaintiff and defendant by
which the plaintiff agreed to purchase the lands for the
sum of $6,000, $1,000 of which was paid in cash, and the

remainder, as the contract read, was to be paid at the option of the vendee, and in consideration of the payment of the amount provided defendant Nolde agreed "at his own costs to execute and deliver to said party of the second part, or his assigns, upon surrender of this contract, a warranty deed to the above described premises, together with an abstract showing title clear."

On February 6, 1903, in alleged conformity with this contract, plaintiff Gray, through his attorney, Mr. Stiner, called on defendant Nolde and told him he was willing to pay the remainder of the purchase money with interest if he (Nolde) would execute a warranty deed, and have his wife sign and acknowledge it, to the premises in controversy; that he went into the bank of Sutton with Mr. Nolde and procured the exact amount of the money that was due, and said to Mr. Nolde that he would leave that money with Mr. Dinsmore, the president of the bank, if he would execute a deed with his wife to the land; that he gave Nolde a deed and told him to execute it and bring it back to the bank, have his wife sign with him, and that Mr. Dinsmore would then give him the full amount of the money due on the contract. Mr. Dinsmore, the president of the bank, testifies that he was called in during the conversation, and that the money was left with him, with directions to turn it over to Nolde if he brought in the deed properly executed by himself and wife, and that Nolde never returned the deed. There was evidence introduced also tending to show that the price of the land in dispute had advanced about $2,000 from the time the contract was entered into and the time at which the deed was demanded. It is unnecessary, in view of the conclusion to be reached, to examine the testimony offered by defendant.

In this condition of the pleadings and the evidence the court told the jury in the third paragraph of instructions on his own motion that they must return a verdict for the plaintiff, and in the 4th instruction placed the burden on the plaintiff to prove the amount of his damages, and in the 5th paragraph of instructions he gave the following

on the measure of damages: "In arriving at the amount of damages which plaintiff is entitled to recover, you will take such amount as from the evidence you find to have been the fair market value of the land in question on February 6, 1903, and deduct therefrom the unpaid balance of the contract price of the real estate, to wit, $5,000, with interest thereon at the rate of 6 per cent. per annum from January 1, 1903, and the difference betwen said sums found is the amount which plaintiff is entitled to recover as damages." This instruction plainly resulted in the monstrous verdict and judgment complained of.

When plaintiff, under the terms of the contract alleged on, was prepared to fully comply with the conditions on his part, two remedies were plainly open to him. One was the tender of the amount due on the contract, and demand of an abstract of title and the warranty deed from the defendant, and not from the defendant and his wife, and if the defendant refused to execute and deliver such a deed, plaintiff might then pursue his remedy for a specific performance of the contract, or he might rescind the contract because of defendant's refusal to execute the deed, and sue to recover back the money paid, and the reasonable profit on his investment. But he did neither. He made an alleged tender, conditioned on the execution of a deed by both defendant and his wife, which the contract did not call for. Having done this, he withdrew his tender, retained possession of the premises and still retains them, claiming them as his own, and instituted his action to recover back the present value of the premises because of defendant's failure to give him a deed. If the judgment in the court below was affirmed, it would leave plaintiff in possession and equitable ownership of the land in dispute, relieve him of the payment of $5,000, and interest due on the purchase price of the land, and give him a judgment at law against the defendant for nearly $3,000, in return for his payment of but $1,000 of the purchase price. Such a judgment as this would fall nearly under the ban of the command handed down to the inspired Law

Giver in the awful majesty of Sinai, which says, "Thou shalt not steal."

It is contended however by counsel for defendant in error that the instruction of the trial court is supported by the holding in *Kirkpatrick v. Downing*, 58 Mo. 32, 17 Am. Rep. 678, in which the rule was laid down that, in an action by a vendee to recover damages for breach of a contract to convey land, the measure of damages is the difference between the price agreed to be paid and the value of the land when the breach occurred, with interest. The opinion in this case is a well-considered one and contains a thorough review of the cases, both American and English, on the measure of damages in an action for a breach of contract for the conveyance of real estate, and we have no quarrel with the conclusion reached in this opinion. The difference between this case and the one at bar is this: In *Kirkpatrick v. Downing, supra,* the plaintiff, who was the purchaser of the land, had been evicted from the land by the vendor before the action was instituted. *Krepp v. St. Louis & S. F. R. Co.,* 99 Mo. App. 94, 72 S. W. 479, is also relied upon by defendant in error as an authority which sustains the measure of damages given by the trial court. The facts in this case were that the plaintiff had purchased 400 acres of land from the defendant railroad company. When the railroad company proceeded to execute its deed to the land, it discovered that it had already conveyed 40 acres of this land to another vendee. It thereupon tendered a return of the purchase price, or a deed for the 360 acres to which it held the title, and $60, the amount of the purchase price of the 40-acre tract which it had previously conveyed. Plaintiff brought his suit, asking for the conveyance of the 360 acres, which the company did not resist, and also asking for $200 damages for the failure to convey the 40-acre tract for which he had paid. The court held in this controversy that the proper measure of damages was not the contract price of $60, but the actual value of the land at the time the deed should have been executed, and per-

mitted a recovery of $175 damages by the plaintiff. So while each of these cases announced a measure of damages which is supported generally by the American and modern English authorities, neither of them are in point. The whole trouble with the measure of damages allowed in this case is that it permits plaintiff to retain the land and also recover for its enhanced value at the time the deed was demanded. Under the rule submitted in the case at bar, if plaintiff had paid the full amount of the purchase price, he would have been permitted to retain the land and recover $8,000 damages for defendant's failure to execute the deed, as he had contracted to do. If plaintiff had rescinded and placed defendant *in statu quo* before instituting his action, the rule announced would have been unobjectionable, but as it is it in fact gives plaintiff both the land and a large money judgment against defendant for failing to convey it to him. Such a judgment is shockingly unconscionable and wholly·unsupported by the evidence.

We therefore recommend that the judgment of the district court be reversed and the cause remanded for further proceedings according to law.

AMES and LETTON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED.

The following opinion on motion for rehearing was filed June 22, 1905. *Rehearing denied:*

Land Contract: BREACH: ACTION. A vendee of real estate, while in possession and claiming to be the owner thereof under a contract of purchase, cannot maintain an action against his vendor to recover the amount paid on the purchase price for a breach of the contract to convey, together with the difference between

the value of the land at the date of purchase and the time when
the breach occurs as damages.  Before he can prosecute such
an action he must rescind the contract, surrender the possession
of the premises to the vendor, and thus place him as nearly as
possible *in statu quo.*

BARNES, J.

In our opinion in this case, written by Mr. Commis-
sioner OLDHAM, *ante,* p. 373, we held that the measure of
damages in an action for a breach of contract to convey
land is the difference between the price agreed to be paid
and the value of the land when the breach occurs, with
interest; that to recover the amount paid on the contract
and such measure of damages, the vendee must either be
evicted from the premises or rescind his contract, and thus
place his vendor *in statu quo.*

The defendant in error has filed a motion for a rehear-
ing, and now contends that, while the propositions of law
announced are correct in the abstract, and the facts are
correctly stated in the opinion, yet the rule announced
is misapplied.   In support of his contention he relies on
*Seaver v. Hall,* 50 Neb. 878, 882; *Winside State Bank v.
Lound,* 52 Neb. 469; *Reed v. McGrew,* 5 Ohio, 375, 386, and
*Taylor v. Browder,* 1 Ohio St. 225, 228.   An examination
of these cases discloses that they are not in point.   In the
leading case, *Reed v. McGrew, supra,* the court said:

"Where the plaintiff sues to recover back money paid
upon a contract which has failed, he must show that he
has done all in his power to restore the defendant to the
same situation in which he was when the contract was
made.   If the possession of the property contracted for
has passed to the vendee, it must be restored to the ven-
dor; and if, owing to the negligence or any other act of
the vendee, it is not in his power to restore the possession,
although he is not without remedy, still he cannot have
the action for money had and received.   He must sue
upon the contract and recover damages for its violation.
For instance, A contracts to sell a quarter section of land

to B, and receives one-half the purchase money. B takes possession. The title afterward fails, or A refuses to convey. B may surrender the possession to A, thereby assenting to a rescission of the contract, and recover back the money paid, in an action for money had and received. Or he may consider the contract as subsisting, and claim damages for its breach. In the latter case, it would not be necessary, as a preliminary step, that he should surrender the possession."

It thus appears that, in case the vendee elects to sue for the recovery of the purchase price, together with his damages for the failure to convey, as was done in this case, he must surrender the possession of the premises to the vendor before he can maintain his action. It appears from the testimony in this case that the land in question between the time of the purchase and the date of the failure to convey had increased in value to the amount of about $2,000; that the vendee had paid $1,000 of the consideration money, and had entered into possession of the land. The verdict and judgment in the court below were for nearly $3,000, and were in accordance with the form and cause of action outlined by the petition. So it is evident that the vendee, while still in possession of the land, and claiming it as his own, brought suit against the vendor for a failure to convey, and recovered the full amount paid by him on the purchase price, together with nearly $2,000 damages. That such a situation calls for a reversal of the judgment below is beyond question.

It appears from the foregoing that our opinion is right, and the motion for a rehearing is therefore

OVERRULED.