## HAWKINS v. STOFFERS, ET AL.
(No. 1535; April 9, 1929; 276 Pac. 452)

228

230

For appellants there was a brief by *Clarence Baird* and *Morris & Callister,* of Salt Lake City, and *N. W. Reynolds,* of Kemmerer, and oral argument by *Mr. Baird* and *Mr. Callister.*

For respondent, there was a brief by *Frazer* and *Wallis,* of Salt Lake City, Utah, and *H. R. Christmas,* of Kemmerer, and oral argument by *Mr. Frazer.*

BLUME, Chief Justice.

On December 6, 1923, a contract in writing was entered into between the Wasatch Development Company, hereinafter called the Development Company, as party of the first part, and Oswald T. Hawkins, respondent herein, and his wife, as parties of the second part. According to the terms of the contract, the parties traded lands, the Development Company agreeing to sell and Hawkins and wife agreeing to buy eighty acres of land in Salt Lake County,

Utah, for the sum of $16,000. Of this sum, $11,600 was to be paid by an exchange of 210 acres of land in Idaho and the personal property thereon then owned by Hawkins and wife, this land to be taken over by the Development Company. The balance of $4400 was agreed to be paid in ten annual instalments of $440 each, the first instalment to be paid on December 6, 1927 and an additional one on the same day of each year thereafter until the whole amount was fully paid. The contract provided, among other things, that ''a good and sufficient warranty deed, together with abstract of title showing clear and unencumbered title, to be delivered to second parties when the said payments are made in full together with interest.'' This clause presumably referred to the Utah property. And it was further provided that ''in the event of the death or total disability of Oswald T. Hawkins, one of the second parties hereto, before all of the payments are made hereunder, first party agrees to deliver to him or his heirs a free and unencumbered title'' to such portion of the Utah property as had then been fully paid for, the remaining payments to be cancelled. By another clause of the contract, which, it is agreed, is a minor covenant not authorizing the cancellation of the whole contract, Hawkins agreed to devote some of his time, commencing with the spring of 1924, to cultivating land of the Development Company adjoining the eighty acres above mentioned, and he was to receive therefor the sum of $100 per month. The Development Company also agreed to erect a frame house on the eighty acres bought by Hawkins and wife at a cost not to exceed $1500, and to erect a barn and to lay a pipeline to the land to supply it with water. At the end of the contract appeared the following guaranty:

''In consideration of the premises we the undersigned hereby guarantee to second parties the fulfillment of the obligations herein undertaken by the first party.''

This was signed by George E. Stoffers and Oscar R. Stoffers, defendants and appellants herein, and by Jeremiah Stokes, Samuel E. Wolley, Charles E. Hayes and J. J. Morey, the last four not being parties to this suit.

Probably on the same date on which the contract was made Hawkins and wife made and executed deeds to the Idaho property, delivering them to the Development Company. The land was deeded in two parcels. In one of the deeds, for 160 acres, George E. Stoffers was the grantee. In the other, the Guaranteed Securities Company appears as grantee. There has, however, been an erasure and Hawkins and wife testified that the deed was in fact made to the Development Company. Hawkins, the respondent herein, took possession of the Utah property in the spring of 1924 and continued in possession until shortly before the commencement of this action. In the meantime improvements were placed on the property as provided by the contract above mentioned, and in addition thereto Hawkins himself expended thereon the sum of $1237.00. He also farmed the adjoining land as he had agreed to do and was regularly paid the sum of $100 per month up to September, 1925, the payments being made by the Guaranteed Securities Company. The amounts due for the months of September to December, both inclusive, were not paid and are sought to be recovered in this action.

The Development Company ceased to do business in the spring of 1924 and thereafter its charter was dissolved by advertisement. The Guaranteed Securities Company became insolvent in the fall of 1925 and went into the hands of a receiver. It is claimed that the Development Company was a subsidiary of, or closely connected with, the Guaranteed Securities Company. The directorate of the two companies was largely composed of the same persons. The Guaranteed Securities Company, it appears, made the payments of $100 per month to Hawkins as already indicated, and there is testimony tending to show that it also paid for the improvements agreed to be erected on the Utah prop-

erty pursuant to the contract above mentioned. This company also came into possession of the deeds to the Idaho property executed by Hawkins and wife as above mentioned. The receiver, so he testified, took possession of them and of the property covered thereby, made disposal thereof and received the purchase price therefor. The business transacted between Hawkins and wife and the Development Company was transacted in the offices of the Guaranteed Securities Company. The receiver found an assignment of the contract with Hawkins, made by the Development Company to the Guaranteed Securities Company, dated December 15, 1923, in the office of the latter company, but in a rather unusual place, and it is not clear from this testimony alone that it came into the possession of the latter company. To supplement the foregoing facts, defendants and appellants offered to show that the Development Company was organized for the express purpose of acting as the agent of the Guaranteed Securities Company in holding real estate. This testimony was, under exception, excluded, on the theory that the articles of incorporation of the companies were the sole competent evidence of its powers and purposes.

Appellants further offered to show that at a meeting of the board of directors of the Guaranteed Securities Company held shortly after December 15, 1923, "a general discussion was had respecting the contract with Hawkins and wife, and that the board of directors were cognizant of the agreement and of the fact that it had been assigned to the Guaranteed Securities Company, and further that they authorized the payment of the moneys due under the agreement, as in the agreement provided." This evidence was excluded as incompetent, irrelevant and immaterial, and an exception was taken.

The receiver above mentioned, in the fall of 1925, also found among the papers of the Guaranteed Securities Company a deed from the Development Company, dated April 24, 1923, covering the eighty acres agreed to be sold to

Hawkins, and other lands. He placed this deed of record on November 19, 1925, and thereupon demanded possession of the premises from Hawkins. He thereafter served a written notice to vacate on Hawkins and, according to the testimony, an agreement was thereupon entered into between them whereby Hawkins agreed to yield up the premises to the receiver and thereafter to farm the land for and on behalf of the latter. The lands covered by this deed were thereafter sold by the receiver pursuant to an order of court. The plaintiff brought this action against the defendants, part of the guarantors of the contract as above mentioned, to recover the value of the Idaho property, the value of the improvements placed by him on the Utah lands, and the amount due him for working the adjoining lands according to the contract of December 6, 1923.

The plaintiffs' second amended petition, after setting forth the terms of the contract of December 6, 1923, the fact that he took possession of the Utah property about February 26, 1924, that he vacated it pursuant to the notice given him by the receiver as above mentioned, and that there is due him $400 by reason of the work performed at $100 per month as above stated, further alleges that he was entitled to recover the value of the Idaho property and the value of the improvements placed by him on the Utah property because the Development Company violated the terms of the agreement of December 6, 1923, has failed and neglected to perform its agreement, and rendered the fulfillment of its obligations thereunder impossible because (a) it conveyed the Utah property, on April 24, 1924, to the Guaranteed Securities Company; (b) because it did not own the property at the time of the contract of December 6, 1923; (c) because it forfeited its charter; (d) because it is insolvent. Plaintiff pleaded that he had performed all of the obligations undertaken by him and that the rights of his wife were assigned to him. The appellants, in their answer, denied the impossibility of performance, and pleaded, among other things, that the two companies were the

same, as above indicated, that the contract of December 6, 1923, was assigned to the Guaranteed Securities Company by it, that the assignment was accepted; that the Guaranteed Securities Company became obligated to perform the terms thereof, and that plaintiff had no right to yield possession to the receiver and should have resisted his demands. The cause was tried to the court, judgment was rendered for the plaintiff and respondent for the various items claimed by him, and the defendants have brought this case here by direct appeal. A number of errors are assigned, which may be summarized as follows: (1) That the second amended petition fails to state a cause of action. (2) That the judgment of the court is contrary to and not sustained by the evidence. (3) That the judgment is contrary to law.

1. The first contention of appellant is that the second amended petition fails to state facts sufficient to constitute a cause of action, because of the lack of necessary allegations, to recover the value of the Idaho lands and of the improvements made by him on the Utah property. It is not necessary to set out the specific allegations which counsel claim should have been made. In addition to the items above mentioned, the respondent also asked to recover the amount which remained unpaid for labor performed under the collateral agreement hereinbefore mentioned. The guaranty was unconditional and one for performance. Hecht v. Acme Coal Co., 19 Wyo. 10, 113 Pac. 789; Merchants National Bank v. Ayers, 37 Wyo. 136, 259 Pac. 804. It is not questioned that the guarantors were in default on this portion of the guaranty at the time of the commencement of the action. Hence the demurrer, which applied to the petition as a whole, was not good.

2. Appellants further argue that since the evidence shows that one of the deeds to the Idaho property was made to George E. Stoffers and one to the Guaranteed Securities Company it affirmatively appears that plaintiff has not carried out his part of the contract, and that he

238

cannot, accordingly, recover herein. They also contend that if the deed, as above mentioned, was altered, plaintiff and respondent should first cause it to be reformed before he is entitled to sue herein. We do not think that the contention is well taken. The evidence was sufficient, we think, for the court to find that these deeds were made pursuant to and to carry out the contract and that they were accepted by the Wasatch Development Company. The latter company could assign whatever rights it had under the contract without reference to the guarantors. Whether a formal assignment had been made or not does not appear, but it is apparent that the deeds made by respondent and his wife, assuming that they were made as above stated, were so made simply in order to save the execution of another set of papers. There is so much the less merit in the contention in view of the fact that appellants claim that the Guaranteed Securities Company and the Development Company were one and the same and in view of the fact, as indicated by the testimony, that the former received the full benefit of the Idaho lands. Counsel for the appellants cite us to a number of authorities that guarantors are not liable beyond the strict letter of their contract, but the citations are of little value, are cited simply in support of elementary rules, and give us little light on the point involved.

3. The main point in the case is as to whether or not Hawkins is entitled to recover the purchase money already paid; that is to say, whether he is entitled to recover the value of the Idaho property. It is not altogether clear from the brief of his counsel upon what theory or theories they seek to recover herein. The contract was executory. While it probably contemplated that Hawkins should have possession of the lands and hence to retain them, there is no express covenant to that effect and there may be a question whether the guarantors were liable on an implied covenant. There was an express

covenant that the development company would convey a clear and unencumbered title, but that covenant was to be performed in the future and there has been no breach thereof, and it is difficult to see how suit may be brought on an unbroken covenant unless it be as a result of the right of plaintiff to rescind the contract or treat it as rescinded. It is said in 39 Cyc. 2001, that as a general rule where there has been no rescission, and no cause for the rescission of a contract exists, there can be no recovery by the purchaser of partial payments made thereunder. In Way v. Johnson, 5 S. D. 237, 58 N. W. 552, an action similar to that at bar, the court said:

"So long as the contract remained in force, he could not recover the money paid. His right to recover in such cases is based upon the fact that the contract is at an end."

And in Distler v. Dabney, 7 Wash. 431, 35 Pac. 138, 1119, which, too, was an action by the vendee to recover the purchase price, the court said:

"The sole question was whether plaintiff was entitled to have the contract rescinded after the showing proposed to be made by the defendant's answer, and that was a question for the court."

In Kruse v. Bush, 85 Or. 394, 167 Pac. 308, it was said:

"In the absence of fraud or some other ground for rescission, the vendee cannot escape the obligations he has assumed in the contract of purchase, nor can he recover back the purchase money he has paid. But the rule is otherwise when the vendee is entitled to rescission."

So too, in Henderson v. Fields, 143 Ga. 547, 85 S. E. 741, a case similar to that before us, the court said:

"Unless the plaintiff is entitled to a rescission of the contract, she is not entitled to the relief sought. Her right

to recover the purchase money which she has paid on the land necessarily depends upon her right to have restoration of the status."

That case further holds that there is no substantial difference between a purchaser in possession under an executed deed and one in possession under a bond to make title. Judging from some of the statements made in the brief of respondent and some of the cases cited, it is probably the theory of counsel for plaintiff and respondent that the latter had a right to rescind the contract, and therefore, sue for the breach thereof. Among the cases cited to that effect and involving points similar to those involved here are Wilhelm v. Fimple, 31 Iowa 131, 7 Am. Rep. 117; Hawkins v. Merritt, 109 Ala. 261, 19 So. 589; Martin v. Chambers, 84 Ill. 579. And although Greenberg v. Ray, 214 Ala. 481, 108 So. 385; Leisch v. Baer, 24 S. D. 184, 123 N. W. 719; Quirk v. McDonnell, 195 Ill. App. 331, say nothing about the right to rescind, we take it that the right to recover the purchase money was necessarily based on the right to rescind. We shall treat the case at bar accordingly.

The right to rescind exists for various reasons. Among them are enumerated want of title and insolvency of the vendor. 39 Cyc. 1406, 1419, 2006-2008. But as said in Martin v. Chambers, supra:

"A party who seeks to rescind a contract must restore or offer to restore the property obtained, before he can recover back the purchase price paid."

And that is the general rule (27 R. C. L. 653, 654; 39 Cyc. 1423-1424), unless, of course, deprivation by paramount title makes restitution impossible, or, perhaps, useless. We see no good reason why that rule should not apply when a guaranty is sued on as in the case at bar. So it is said in 39 Cyc. 1430; Warvelle on Vendors (2nd Ed.) Sec. 868, that, ordinarily, notice of an inten-

tion to rescind must be given in some form, though that, perhaps, may be implied from an offer to restore everything of value and tendering back possession. See Winkler v. Jerrue, 20 Cal. App. 555, 129 Pac. 804. But counsel have directed us to no case where that has been held to be necessary in case of eviction under paramount title. And it is held that no notice of claim of such title made by a third party, or suit brought by him, is essential to be given to a warrantor, though, if given, it would be advantageous to him. 15 C. J. 1265. If that is true at so vital a time, less reason for notice would seem to exist at a later time. It is not necessary, and we have thought it best, not to decide this point, until it may be more fully argued and elucidated by counsel. There was in the case at bar no restoration or offer of restoration of the property, and hence the questions of mere want of title in the vendor or its insolvency or impossibility to perform are not at all in the case and the plaintiff is in no position to recover herein by reason of the existence of these facts. His right to recover, accordingly, must necessarily be based, if he is entitled to recover at all, upon the fact that he was evicted from the premises or that he was deprived of his right by reason of a paramount title. It is said in 39 Cyc. 2009, that ''where a person in possession under an executory contract of sale is evicted, he may recover from the vendor the purchase price paid.'' An examination of the various authorities cited will indicate, we think, that the eviction must be pursuant to a paramount title, and that when such eviction takes place, that fact authorizes rescission of the contract and recovery of the purchase price paid. The rule is that in order to recover on a covenant because of eviction, such eviction must be pursuant to a paramount title, unless notice, as hereinafter mentioned, is given. 7 R. C. L. 1197; 15 C. J. 1310. No reason exists why that rule should not be applied here. That, in fact, is conceded by counsel for respondent.

If the eviction took place pursuant to such title, then, contrary to the contention of counsel for the appellants, no tender of the purchase price still unpaid was required to be made, since the law does not require a vain thing. Wilhelm v. Fimple, supra; Hawkins v. Merritt, supra; 27 R. C. L. 653; Warvelle, supra, Sec. 925.

The sole question before us, accordingly, is as to whether or not the respondent yielded to a paramount title. The burden to prove that rests upon him. 7 R. C. L. 1196, 15 C. J. 1310. For such title he relies solely on the deed of April 24, 1923, given by the development company to the Guaranteed Securities Company. But that deed was not placed of record, as hereinbefore stated, until November 19, 1925; the respondent had in the meantime, and in the spring of 1924, gone into possession of the property and was in such possession when the deed was placed of record, and the evidence specifically shows that he knew nothing of the deed until the fall of 1925. Under these circumstances the possession of the land by Hawkins gave notice to the world of his interest in the land. 39 Cyc. 1744. If he was a purchaser in good faith for value, and the testimony in the record before us indicates that he was, the deed of April 24, 1923, was, under our recording acts, absolutely void as to him. Sections 4609, 4610, Wyo. C. S. 1920; 39 Cyc. 1741-1756. And we presume that the laws in Utah are the same. Hence, it is difficult to see how the claim of counsel for respondent that this deed showed a paramount title in the receiver, who took nothing more than what the Guaranteed Securities Company had, can be sustained.

And that is not all. The respondent was bound to deal fairly with the vendor and the guarantors, and he ought not to be entitled to recover any damages which could have been prevented by him by the exercise of reasonable care. 15 C. J. 1265, 1283. It was easy for him—a rule that should be applicable here as well as when an action

is brought on a covenant—to relieve himself from responsibility by giving notice to the guarantors of the claim of the receiver and of any suit which the latter might have wished to institute. 15 C. J. 1264, 1315; Tiffany on Real Property (2nd Ed.) Sec. 453. In fact, that is an absolute requirement, under statute, in some of the states, when a covenant in a deed is relied on. See Ernst v. St. Clair, 71 Colo. 353, 206 Pac. 799; R. L. Okla. 1910, Sec. 1166. That was the rule under the Roman law. Code Justinian, 8, 44, 8. But the respondent did not choose to take the safe course which would seem to have suggested itself to a reasonable man, but took the risk of proving that he yielded to a paramount title. We do not find it to be a prerequisite in the authorities that the title to be protected must be a legal title. It would seem that though he had only an equitable title he should have protected that or should have given the notice above mentioned, for any other course would seem to constitute unfairness toward the guarantors. See Johnson v. Oldberg, 32 S. D. 346, 143 N. W. 292. It is probable—a point, however, which we need not decide—that he would have been entitled to be reimbursed for expenses incurred to protect that title or to ultimately obtain a legal title, if he could not obtain it otherwise, by a suit to quiet title. See 15 C. J. 1532. If the Guaranteed Securities Company, accordingly, was bound by the contract with Hawkins and wife, and took whatever rights it had subject thereto, then the respondent should have protected his title, or should have given the notice above mentioned. There is testimony in the record tending to show that the company last mentioned was so bound. We need not repeat that testimony here, except to add that the very fact that the Guaranteed Securities Company did not place the deed of April 24, 1923, of record is a circumstance tending to prove the foregoing fact. In addition to that, the evidence offered by appellants, but rejected, was, we think, competent and

relevant on that point. Part of it was offered to show the inter-relations between the two companies, which cannot well be done by proof of the articles of incorporation of one of the companies. For a discussion of such inter-relations, see Farmers State Bank v. Haun, 30 Wyo. 322, 222 Pac. 45. The other testimony offered but rejected tended even more directly to show that the assignment heretofore mentioned was made and accepted by the Guaranteed Securities Company, which was important to be shown under one of the defenses of the appellants. The rejection of such testimony would seem to indicate that the trial court did not consider this point as a defense herein. We think that this, as well as the rejection of the testimony above mentioned, was error. We might say in this connection that counsel for respondent seem to think that the want of knowledge on the part of respondent of the assumption of the contract by the Guaranteed Securities Company is of some importance. We have not, so far, been able to see the force of that. It would seem that the respondent's duty was to show that he yielded only to a paramount title, which was paramount in fact, not one which might seem to him to be so, in view of his knowledge. The point has not, however, been fully presented, and hence we pass it without deciding it.

The court, in addition to the purchase money, evidently allowed the respondent the sum of $1,237 for improvements placed on the Utah land. It seems that in most jurisdictions the value of such improvements is not allowable in an action like that at bar, although there seems to be a conflict of authority. 15 C. J. 1331. The point is not argued and we do not decide it, but mention it merely so that our opinion may not hereafter be misunderstood.

The judgment of the District Court is accordingly reversed and the cause remanded for a new trial.

*Reversed and Remanded.*

KIMBALL and RINER, JJ., concur.

BLUME, Chief Justice.

The respondent has filed a petition for a rehearing herein. The first point urged is that we were wrong in holding that the unrecorded deed of the Guaranteed Securities Company was not good as against Hawkins, a purchaser in good faith and for a valuable consideration, under an executory contract of purchase. Counsel argue that because the deed was recorded in the fall of 1925, about thirty days prior to the recording of the executory contract for sale, the deed takes precedence, notwithstanding the fact that Hawkins purchased the property, paid most of the purchase money, and went into possession and remained in possession about eighteen months after he purchased the property, and notwithstanding the fact that the deed was not recorded for approximately two and one-half years after it was made. In other words, the facts are about as follows: A, the original owner of a piece of land, sells it to B, giving a deed, the deed not being placed of record and no possession being taken under it. Some eight months after this deed was given, A sells the same land to C on a contract for a deed; C pays most of the purchase price, goes into possession of the land and makes improvements thereon. Some two and one-half years after the deed was made to B, he places it of record, the contract for deed to C not being then recorded. It is the contention of counsel for the respondent that the possession of C under his contract of deed is of no importance whatever, and that the fact that B recorded his deed before C recorded his contract, the rights of B are prior and superior. The question is of vital importance; the bar in the state would, we think, be surprised if we should state that to be the rule, and we have thought it best to reconsider the subject at some length.

The statutes of this state to be considered herein—and we must, in the absence of evidence, presume the laws of

Utah to be the same as the laws of this state—are Sections 4576, 4609 and 4610, Wyoming Compiled Statutes 1920, which read as follows: .

4576. "The term 'conveyance,' as used in Chapters 291 to 294 inclusive, shall be construed to embrace every instrument in writing by which any estate or interest in real estate is created, alienated, mortgaged or assigned, or by which the title to any real estate may be affected in law or in equity, except wills, leases for a term not exceeding three years, executory contracts for the sale or purchase of lands, and certificates which show that the purchaser has paid the consideration and is entitled to a deed for the lands and contain a promise or agreement to furnish said deed at some future time."

4609. "Each and every deed, mortgage, instrument or conveyance touching any interest in lands, made and recorded, according to the provisions of law, shall be notice to and take precedence of any subsequent purchaser or purchasers of such land from the time of the delivery of any such instrument at the office of the register of deeds of the county in which the lands described in such instrument are situate, for record."

4610. "Every conveyance of real estate within this state, hereafter made, which shall not be recorded as required by law, shall be void, as against any subsequent purchaser or purchasers in good faith and for a valuable consideration of the same real estate or any portion thereof, *whose conveyance shall be first duly recorded.*"

It is a well known fact that the design of the recording laws is to prevent fraud in transactions by securing certainty and publicity in such dealings, and for that reason purchasers of real estate should have their conveyances seasonably recorded. Atwood v. Bearss, 47 Mich. 72, 10 N. W. 112. Inasmuch as this is the primary purpose of the recording laws, they should not, if possible, be construed so as to produce fraud, but so as to prevent it, in order to be in harmony with the ultimate and primary intent of the legislature. Counsel for the respondent claim

that even though a subsequent purchaser is a purchaser in good faith and for a valuable consideration, nevertheless the sole criterion as to priority depends upon which of the conveyances shall be first duly recorded, as mentioned in the last sentence of Section 4610, supra. That sentence is contained in the laws of a number of states, and is somewhat remarkable. It may well be doubted that the requirement of recording the instrument of purchase of a subsequent purchaser subserves any of the purposes, or at least primary purposes, intended by the legislature. It was said by the Supreme Court of Washington in the case of Swanstrom v. Washington Trust Company, 41 Wash. 561, 83 Pac. 1112, as follows:

"Recordation is required for the protection of subsequent purchasers only. To require a subsequent conveyance of title to be recorded in order that a prior purchaser of the same property may be able to obtain information of its existence would not be in furtherance of the general design of these statutes, which was to protect purchasers from being undone by prior secret conveyances, by making the means of obtaining information thereof available to that end. And so it is not necessary to his full protection in the absence of statutory provisions so requiring that the subsequent purchaser record the instrument under which he claims before the recordation of the conveyance of the prior purchaser."

The case quotes from 24 Am. & Eng. Ency. L., (2nd Ed.), p. 140, where a number of cases to the same effect may be found. The recording acts in many, if not in most of the states, do not require the recording of a subsequent instrument. Note, Ann. Cas. 1912A, pp. 194 to 200. Under Section 4609, supra, instruments of conveyance touching interest in land give notice to subsequent purchasers, and take precedence only from the time when the instrument is delivered at the office of the register of deeds for recording. It is hard to perceive what, if any, effect this section has, if the construction contended

for by counsel for the respondent is correct. If that section stood alone, there can be no doubt, we think, that a subsequent purchaser in good faith would be protected against an unrecorded deed, even though he did not record his instrument. Home Savings Bank v. Peoria etc. Society, 206 Ill. 9, 69 N. E. 17, 99 Am. St. Rep. 132. And see cases cited in note, Ann. Cas. 1912A, 194.

In considering this question, we may in the first place call attention to the fact that under the provisions of Section 4576, supra, an executory contract for the sale or purchase of land, such as was held by Hawkins in this case, is not a conveyance, and it would accordingly seem that such contract can hardly be contemplated in the clause ''whose conveyance shall be first duly recorded,'' mentioned in Section 4610, supra. See 39 Cyc. 1732, Note 19. Yet it is hardly possible that the legislature did not intend to protect a purchaser in good faith and for a valuable consideration, under an executory contract of sale, at least to the extent of his interest in the land. In fact, the provisions of Section 4609 would seem to be ample for his protection.

The basis of the former decision for holding Hawkins protected under his contract was that he paid most of his purchase price, went into possession of the land and held it for approximately a year and a half. Open, visible and exclusive possession is ordinarily held to take the place of registration. Thus it is said in note, 104 Am. St. Rep. 353, that such possession is notice to all the world of the title or right of the occupant. And on page 345 of the same volume it is said:

''It seems to be generally considered that possession under an unrecorded deed or contract of purchase is equivalent to registration of the deed or contract and affords the same protection.''

The contention of counsel for the respondent, however, seems to be that such possession takes the place of registration only if it is the possession of a prior purchaser and not of a subsequent purchaser, as Hawkins was in the case at bar. In 27 R. C. L., page 719, it is not so limited, and it is said that possession protects not only a subsequent purchaser with notice but also gives protection "where it is sought to charge a subsequent purchaser or incumbrancer with notice of an unrecorded deed and thereby defeat his right to protection under the recording acts." We have been surprised, in making a somewhat exhaustive investigation of the subject, that so few cases seem to be reported which deal with this direct question. Counsel have cited us to the case of Pennsylvania Salt Mfg. Co. v. Neel, 54 Pa. St. 9, and that case seems to sustain their contention. The facts were very similar to those in the case at bar. The statute in that state at that time provided that a deed not recorded within six months should be considered to be "fraudulent and void against any subsequent purchaser or mortgagee for a valuable consideration unless such deed or conveyance be recorded as aforesaid before the proving and recording of the deed of conveyance under which such subsequent purchaser or mortgagee shall claim." The prior purchaser in that case recorded his deeds on December 24, 1839. Previously, and on February 26, 1834, Neel bought the same land, went into possession of it and paid all of the purchase price under a contract of purchase, without recording the latter. The Supreme Court held that the first purchaser was protected. Neel contended that under his contract of purchase he was not entitled to a deed until he had paid for the land, and he could not, accordingly, record it, but the Supreme Court answered that contention by simply saying that he should have made a contract that would have entitled him to a deed sooner. The decision is in strange contrast with the well

reasoned opinion of the presiding justice of the lower court, who held that Neel was protected under his contract of purchase and that every principle of justice required that he should be held protected. We think that the decision is also in strange contrast with some prior decisions of that court. In the case of Youst v. Martin, 3 S. & R., (Pa.) 423, the facts were as follows: The title originally was in James McLene, who, on the 23rd day of March, 1793, sold the land under an agreement for sale to John Martin, but subsequently McLene repossessed himself of the land, apparently unlawfully. Thereafter, in March, 1802, McLene sold the same land under contract to one Youst, who went into possession of the land and paid a part of the purchase money agreed to be paid by him. He received his contract and made these payments prior to the time that he had any notice of any interest which John Martin had in the land. The court held that Martin was not entitled to recover the land until he had reimbursed Youst for the money which the latter had paid on his contract. The same principle was applied in the case of Union Canal Co. v. Young, 1 Wharton 410, 432, 30 Am. Dec. 212, except that in that case the holder of the prior claim to the land held the legal title, of which the subsequent purchaser under his contract of sale did not receive notice until he had made a number of payments under his contract of purchase. In Youst v. Martin, supra, Tilghman, chief justice, said, among other things, as follows:

"Youst had paid a large part of his purchase money before he received notice of the agreement between McLene and John Martin (the prior and superior equitable claimant). It was a question, what was the effect of such notice. The court charged, that the notice was sufficient, provided it was received before the execution of the deed of conveyance from McLene to Youst, and before payment of the whole purchase money. To this broad proposition I cannot assent. It would lead to consequences very

alarming. It has been much the custom in Pennsylvania to make sales of land under articles of agreement, by which the purchaser, paying part of the money in hand, enters into possession and pays the residue by installments. Suppose, in a case of this kind, after many years possession, and improvements made, part of the purchase money being still due, and a conveyance of the legal estate unexecuted, notice should be given of a prior contract for sale of the same land. Can it be said that it would be against equity for the man in possession to obtain a conveyance of the legal estate? or, that a court of equity would force him to give it up till he had at least been reimbursed the money which he had paid before he received notice? or, if the improvements had been expensive, or the lapse of time considerable, would he be compelled to give it up at all? In cases of this kind, equity depends very much on circumstances. We should be cautious, therefore, in laying down general rules. I would only say, at present, that before the defendant, Youst, was forced to give up the possession, he ought to be reimbursed the money which he had paid before he received notice. He had paid his money on the faith of the legal title, which, together with the possession, he found in McLene, who had recovered the land by an ejectment. The persons who now call for equity were the cause of his paying this money; he had suffered by their negligence; his equity, therefore, is stronger than theirs.''

In the same case, Justice Gibson said as follows:

''An error is assigned on this record, in a point of great importance in this country. It very frequently happens that sales of land are made on long credits, the purchase money being payable by yearly installments. If notice alone of a former sale or secret incumbrance, given at any time previous to payment of the whole purchase money and execution of the deed, without indemnity tendered, should affect the land in the hands of a purchaser, certainly innocent at the time he bought and paid his money, most deplorable injustice would be the consequence. I do not say that in every event part payment ought to protect the land, in the hands of a purchaser without notice, from a trust or incumbrance. But before the *cestui que* trust or incumbrancer shall affect his title,

it will be necessary to indemnify him for all payments and improvements made by him, up to the time when he first received notice. Shall his land be swept away, and he left to get back his money in the best way he can from the vendor, who may in the meantime have become a bankrupt? Every principle of justice forbids it."

It would seem that the reasoning in this case, so far as justice is concerned, is fairly applicable in the case at bar. The laws of Pennsylvania were s u b s e q u e n t l y amended, as shown by the case of Smith v. Young, 259 Pa. 367, 103 Atl. 63, and under that act injustice against purchasers under a contract of sale who go into possession would at least be reduced to a minimum.

In the case of Bautisto v. Francisco Sioson, 39 Philippine Rep. 615, the syllabus is as follows:

"In a case where real property has been sold two or three times to different persons and the corresponding deeds of sale do not appear to have been entered in the registry of property, the question as to who is the lawful owner of such property, in accordance with the provisions of Article 1473 of the Civil Code, should be resolved in favor of the purchaser who first took possession of the property, pursuant to the provisions of Article 1462 of the same code."

The case cannot be said to be in point here because of statutory provisions, but indicates, nevertheless, as to what would be just in a case of that character. That is true also in the case of Keith v. Aztec Land & Cattle Co., 21 Ariz. 634, 193 Pac. 535, where the question of possession was discussed and it was held that under the statutes of that state a purchaser of grazing lands taking possession under an executory contract of sale has prior rights to a lessee under an antedated lease not recorded at the time of the purchase or the taking of possession. The statutes of that state, too, are somewhat different from the statutes of this state. The case of Watts v. Lundeen,

165 Minn. 300, 206 N. W. 444, however, seems to be almost exactly in point in this case. Section 8226, General Statutes of Minnesota 1923, provides as follows:

"Every conveyance of real estate shall be recorded in the office of the register of deeds of the county where such real estate is situated, and every conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate or any part thereof whose conveyance is first duly recorded," etc.

In that case, one Unumb was the mortgagee of two real estate mortgages for $2,000 each, which he assigned to two different banks. The assignments, which were held to be conveyances under the statutes of Minnesota, were not recorded. Unumb obtained the legal title to the premises from the mortgagor. Thereafter and on October 4, 1921, he sold the property to Lundeen on a contract for deed, for $3,500. Lundeen went into possession. The court does not specifically so state, but it seems clear from all that is said that the contract for deed was not recorded. After Lundeen had made a number of payments on his contract, the banks, assignees of the aforesaid mortgages, filed the assignments of record, and proceeded to foreclose the mortgages. Lundeen thereupon brought an action for injunction to restrain them. The Supreme Court sustained his contention that his rights were superior to the rights of the banks and said in part as follows:

"The fact that the banks withheld their assignment from record is the occasion for their present unenviable position, and by virtue of the recording act they are not in a position to assert their mortgages as against plaintiff in possession of the property under his purchase in good faith. The statute has not changed the rule that subsequent purchasers are charged with notice of the rights of the one in possession. * * * Plaintiff's rights had attached and he was in possession when the assignments were recorded."

It will be noted that possession was evidently considered as of the same force and effect as registration, and that a party with a prior unrecorded conveyance was treated the same as a subsequent purchaser. We think the holding to be in accordance with justice and common sense, and that a purchaser in good faith for a valuable consideration under a contract for sale who goes into open, notorious and exclusive possession of the premises should be protected in the same way as any other purchaser. That protection, of course, should not be extended any further than necessary, and a prior purchaser who holds a valid conveyance, though not recorded, should succeed to the rights of his grantor to the balance of the purchase price of the property still unpaid by the purchaser under a contract. Watts v. Lundeen, supra; Gleaton v. Wright, 149 Ga. 220, 100 S. E. 72.

2. Counsel for respondent also insist that we were wrong in holding that the case turns on the question as to whether or not plaintiff yielded the property in dispute under paramount title, but insist that plaintiff was entitled to recover also, in the absence of yielding to such title, upon the theory that the contract was repuditated or rescinded by the Wasatch Development Company, and that the respondent did not rescind the contract. Now it is doubtful that the Wasatch Development Company can be said to have repudiated the contract in any manner whatever. The conveyance which it made to the Guaranteed Securities Company was made long before the contract with respondent. It did nothing whatever after the making of the contract which in any way whatever indicated that it did not intend to be bound thereby, unless it be the testimony that its charter was annulled. In any event, the conveyance made to the Guaranteed Securities Company did not necessarily constitute a repudiation. Johnson v. Olberg, 32 S. D. 346, 143 N. W. 292; Kreibich v. Martz, 119 Mich. 343, 78 N. W. 124; Bartlett v. Smith, 146 Mich. 188, 109 N. W. 260; Joyce v. Shafer, 97 Cal. 335, 32 Pac. 320; Shively v. Semi-Tropic Land & Water Company, 99 Cal. 259, 33

Pac. 848; Garberino v. Roberts, 109 Cal. 125, 41 Pac. 857; Webb v. Stephenson, 11 Wash. 342, 39 Pac. 952; Hall & Pope v. N. & S. Co., 55 Fla. 235, 46 So. 178. In Kreibich v. Martz, supra, the original owner, after selling the land to Kreibich, conveyed it by absolute warranty deed to one Hannan, but the latter orally accepted his deed subject to the rights of the former, and the court held that Kreibich had no right to treat the contract as rescinded. So, in the case at bar, the appellants claim that the Guaranteed Securities Company agreed to carry out the contract with the respondents. But let us suppose that the conduct of the Wasatch Development Company might be treated as a repudiation, what was the situation then? The term rescission is sometimes used in an equivocal sense. See Williston on Contracts, Section 1302 and 1467 and notes. A repudiation by one party does not, by itself, put an end to a contract, but it gives the right to the other party to treat it as rescinded—to accept the repudiation. See Williston, supra, Sec. 1302; Black on Rescission, Sec. 6. Now acceptance of the repudiation on the part of the buyer would, in a case like that at bar at least, be the same or substantially the same as when the buyer, for some good cause, ''rescinds'' the contract, and the rules as to the duty of the buyer should not, in a case like that at bar, be any different in the one instance than in the other, and that, after all, is the main question herein. It is said that the institution of a suit to recover money paid on the contract amounts to a rescission thereof. 39 Cyc. 1431; Frye Pulpwood Company v. Ray, 114 Me. 272, 95 Atl. 1039; Michaelian v. Land Co., 76 Cal. App. 541, 245 Pac. 476, 478; Cons. Inv. v. Acres, 12 Alta. L. 210; Gunn v. Land Co., 9 Sask. L. 94; Krom v. Kaiser, 21 Dominion L. R. 700; and see the cases to that effect cited in the original opinion. In the case of White v. Harvey, 175 Ia. 213, 157 N. W. 152, the court said that a vendee of land might, in certain cases, either rescind or sue for damages, but that he could not have both remedies, and said:

"The reason for this rule is that the remedies are inconsistent; in the one case the contract is affirmed and damages are asked for its breach, and in the other it is disaffirmed, rescinded and held for naught, and the parties are simply placed in *statu quo.* * * * One action proceeds on the theory of a tort and the other on breach of contract, and the damages to be awarded are different. In the one case they are governed by the amount stipulated in the contract, and in the other by the difference in value of the property."

So that, on the whole, we think, we were right in considering the contract rescinded by Hawkins, at least for the purpose of making the laws governing rescission applicable.

Counsel cite us to 5 C. J. 878, which is to the effect that an assignor cannot relieve himself from responsibility by making an assignment, but continues liable under his contract. We have no quarrel with that rule, but that at most goes only to the right of rescission in the case at bar, or to treat the contract as rescinded, and in no way whatever as to the duty of the party rescinding toward the guarantors— the important point in this case.

However, let us examine the claim of respondent somewhat further. We are cited to 13 C. J. 651, which, in case of repudiation of a contract gives the other party the alternative to (1) rescind the contract, or (2) to continue to treat it as binding till time of performance arrives, or (3) to treat the renunciation as an immediate breach and sue at once for damages. And counsel for respondent say that they have elected to pursue the third of these courses, and are not relying upon the first—rescission. The cases cited under the third alternative give no support to counsel's theory that Hawkins had a right to give away the land in the case at bar to some one who did not have a paramount title, and that, we must repeat, is the important question herein. There is no doubt that a buyer has, under certain circumstances, the right to sue for damages, aside from the question of rescission. 39 Cyc. 1996, 1997, 2081, 2093. If he does so, he cannot recover greater damages than he sus-

tained. He must be fair in any such case, and is only entitled to compensation to make him whole·"less any abatement by reason of circumstances of which he ought reasonably to have availed himself." Golden Cycle Min. Co. v. Rapson Coal Mining Company, (C. C. A.) 188 Fed. 179; Roehm v. Horst, 178 U. S. 1, 44 L. Ed. 953, 20 Sup. Ct. 780. If a man's total damages, before deduction, are $10,000, but he already has $5000 thereof in his hands, he cannot give away the $5000 and sue for $10,000. If a buyer of land claims damages, and he has in his possession the land which represents the total damages, and which he has a right to hold, he cannot give away the land and then sue for damages. This would seem to be elementary, and supported by even the most primitive notions of justice. If, on the other hand, he has no right to hold the land, and yields it to a paramount title, he can then sue for his total damages. That is substantially the situation in the case at bar. Hawkins did not merely abandon possession of the premises. He voluntarily gave up a valuable right in addition to possession; he conceded the claim of the receiver of having a paramount title, apparently made a compromise with him and virtually thereby cancelled the contract which he had, yielding all of his rights thereunder. Unless that was done under a paramount title, his rights were of some value and presumably worth the purchase price paid by him, so that in that event he suffered no damage whatever. He certainly was not entitled to the return of his purchase money without deducting the value of these rights, whatever it was. See Nolde v. Gray, 73 Neb. 373, 102 N. W. 759, 104 N. W. 165. And we have, accordingly, come back to the original proposition as to whether or not the respondent yielded the land to a paramount title.

Counsel ask what would be the situation if the Wasatch Development Company had done what the receiver did, namely, demand the premises and rescind the contract? We need not·determine that question, for that is not the fact. But without reference to that, it would seem that

even in such case the guarantor would be entitled to some consideration. Suppose that two persons make a contract for the sale of land and jointly and severally agree to perform the covenants therein contained. Thereafter one of the covenantors unlawfully and without right demands of the covenantee the premises involved and the cancellation of the contract. Is it the law, that if the covenantee in such case yields to the unlawful demand, without notice to the other covenantor, and without giving the latter a chance to protect himself, he can hold the latter on his covenants or sue him for the return of the purchase money? That would seem at least to be harsh and unjust, and if that is true in such case, it is true as to the guarantors of the contract in the case at bar. And that, too, applies, under the actual facts in the case at bar.

Counsel for respondent say that the guarantors might have protected themselves, because the receiver had the Utah land in his possession at the time of the commencement of this suit, and did not sell it for some time thereafter. They have failed to point out the remedy which the guarantors would have had. Hawkins, so far as the record shows, had the paramount right to the Utah land, and therefore was able to deal with it as he pleased, subject of course to the responsibilities which he might thereby entail. We know of no way by which the guarantors could have stopped or cancelled his dealings, unless, perchance, fraud were shown, or they would have been entitled, in some way, to be subrogated to the rights of Hawkins. No remedy, as we said, has been pointed out, and we need not determine whether there was any or not. No particular reason is pointed out why the guarantors should have been compelled to undo and untangle the situation created by respondent.

One difficulty with counsel for respondent seems to be the fact that they give an unwarranted construction to the guaranty in the case at bar. They say that it is an absolute guaranty, and seem to draw the conclusion therefrom that the guarantors were by reason of that fact left without

any rights whatever. Many cases were cited by them in their original brief as to the liability of guarantors under an absolute guaranty, but none of them are in point here, and certainly none of them go to the extent of upholding counsel's theory. It is true that the guaranty in question is an absolute guaranty, as we stated in the original opinion. But of what? In the first place, of the $400.00 due for work and labor, and next for the performance of the covenants to convey the premises to Hawkins, by clear title, when Hawkins should perform his covenants in the deed, which he has not yet done. If, accordingly, the time and condition had arrived for the performance of this covenant by the Wasatch Development Company, then, in case of failure or refusal, suit could have been brought by Hawkins against the guarantors without notice of the default, because the guarantors were bound to take notice thereof, although even in such case Hawkins could not, we think, have given the land away to the prejudice of the guarantors. The guaranty in question here does not contain a syllable to the effect that it shall be effective previous to the express time fixed in the contract and previous to the happening of the contingency therein mentioned, and does not contain a syllable that Hawkins should have the right to rescind, and that the guarantors shall be liable if he does so. The basis of liability of the guarantors, accordingly, in this suit, must be sought, not in the expressed language of the guaranty, but at most in the terms implied therein, and in such case the ordinary right of notice to guarantors, so as to give them an opportunity to protect themselves, should not be denied them unless respondent yielded to a paramount title. Thus we have in various ways arrived at the same ultimate conclusion at which we arrived in the original opinion, and we have made so extensive an analytical examination of the various claims of counsel, because they evidently feel that our original decision is wholly and fundamentally wrong.

3. It is also urged that some of the points mentioned in our opinion relating to rejection of some of the testimony and offers made were not properly before the court because not argued, not assigned as error or not excepted to. However, in view of our ruling on the other points herein, we need not investigate whether we were justified in passing on these questions. One other point, however, should be mentioned. Counsel for respondent contend that since we found that the allowance for $400 was not erroneous, and since the specification of error attacks the whole amount allowed by the court, the assignment of error is not good as to any part of it. But that would be carrying a rule of procedure too far. A similar contention to that now made was made in Snowball v. Maney Bros., (Wyo.) 270 Pac. 167, 169, and overruled. That ruling should be followed in this instance.

We see no reason for a rehearing and the petition therefor must, accordingly, be denied.

*Rehearing Denied.*

KIMBALL and RINER, JJ., concur.