## ABRAHAM F. BLOCH *vs.* CATHERINE PFAFF.

The owner of a tract of land bounded south by E. Street and west by P. Street conveyed the eastern portion to A., by deed bounding it south on E. Street thirty feet and west on the grantor's other land; and afterwards the rest of the tract to B. by deed bounding it south on E. Street sixty-six feet and west on P. Street. The southern line on E. Street of the whole tract was, in fact, eighteen inches more than ninety-six feet. *Held*, that this excess of eighteen inches was not to be apportioned, but went wholly to B.

WRIT OF ENTRY for a strip of land, lying on the boundary of the estates of the respective parties, on Eliot Street in Boston, and extending northerly from said street to the rear line of the estates.

At the trial in the superior court, before *Lord*, J., it appeared that both parties claimed title from a common source, Mary Smith, who in 1781 owned a tract of land bounded southerly by Eliot Street, and extending from Pleasant Street on the west to the west line of land of heirs of John Eliot on the east; that in that year there was conveyed to John Innis a parcel of this tract, described in the deed to him as thirty feet in width in front on Eliot Street, as of the same width in the rear, and as bounded on the east by the line of land of the heirs of John Eliot and on the west by other land of the grantor; that subsequently there was conveyed to Nathan Whitmarsh another parcel, adjoining on its eastern boundary the parcel conveyed to Innis,

and described in the deed as thirty feet in width on Eliot Street,
that lastly there was conveyed to John Tuckerman the remain-
ing parcel, adjoining on its eastern boundary the land conveyed
to Whitmarsh, and described in the deed as thirty-six feet in
width on Eliot Street and as bounded westerly on Pleasant
Street; and that by sundry mesne conveyances the parcel con-
veyed to Innis had become vested in the demandant, and the
other two parcels in the tenant.   The line of Pleasant Street
is now indicated by certain structures abutting thereon; the
demandant contended that this line coincided with the bound-
ary of the street at the time of the above recited deeds; and it
was admitted that a measurement of sixty-six feet easterly on
Eliot Street from said line would terminate on the westerly line
of the strip claimed by the demandant.   " The tenant offered to
show that the line of land of heirs of John Eliot above men-
tioned was a well defined and fixed monument, locating the
eastern boundary of the demandant's estate; but the demandant
contended that this line was too uncertain and indefinite to con-
stitute a monument from which measurement could be made."
The distance on Eliot Street from the line which the tenant
offered to show as the true eastern boundary of the demandant's
land to Pleasant Street was in fact about eighteen inches more
than ninety-six feet, and a measurement of thirty feet westerly
on Eliot Street from such line would not include any part of the
strip claimed by the demandant.

   " The land of the demandant was occupied in part by an old
wooden dwelling-house fronting on Eliot Street, which appeared
to have been in existence as early as the year 1800.   The land
on the westerly side of this house, continued by a fence or shed
to the northerly line of the estate, had for many years formed a
part of the inclosure used as the yard of the Whitmarsh house,
on the easterly side of the Whitmarsh estate, but the gutter on
the west side of the demandant's house had overhung by several
inches the walls of the house, and a strip of land in said in-
closure, of the width of the gutter; the wall of the demandant's
house, continued by said fence or shed, forming the easterly
limit of said inclosure.   No windows, doors or other openings

or means of communication were ever known to exist between these two estates on this boundary.

" The tenant contended that the demandant's grantors built this house upon the extreme westerly verge of their land; that the true line of division and occupation was along the baseboard of this house, on its westerly side; that the eaves and gutter along this side of the house always overhung the land granted to her; but that she and her grantors occupied the land under the gutter, up to the base-board of the demandant's house, for the ordinary purposes of a yard to the dwelling-house on her land; that no adverse or exclusive occupancy of the land under those eaves had been maintained by the demandant and his grantors, except by the overhanging as aforesaid; and she offered evidence tending to show such occupancy by her and her grantors, and that the water flowing into this overhanging gutter had been conducted around and upon the land of the demandant in the rear of his house; that when, on one or two occasions, this water had fallen on the land under these eaves, complaint had been made against it as an encroachment on the Whitmarsh estate; and that, upon such complaint, the water had been turned by the demandant and his grantors, so that it was conducted around and fell on the land in the rear of the demandant's house. The demandant contended that this had been done as a neighborly act, and never yielded as a right, and the evidence on this point was conflicting."

The judge ruled, " upon the facts as agreed, (the three estates thus formed out of the original estate of Mary Smith, and each containing somewhat more in extent of territory than the deeds called for, having been used as stated in the evidence,) that the house of the demandant, erected about 1801, was upon land granted to the demandant, which extended to the exterior limits of the eaves of the house, towards the tenant's estate; that there was no sufficient evidence of a disseisin by the tenant or her grantors, of the land under the eaves of the demandant's house, to divest the demandant of his title thereto; and that the line by the exterior line of the eaves of the house was a straight line to the western boundary " The jury returned a verdict for the

demandant, for the strip of land of the width of the eaves of the demandant's house, continued to the rear of the estate, and the judge reported the case to this court "for their determination of the correctness of the ruling."

*A. Russ,* for the tenant.

*H. W. Paine,* for the demandant.

COLT, J. We know of no rule of construction which would extend the line on Eliot Street beyond the distance given in the deed of Smith to Innis in 1781, under which the demandant claims title.

The whole tract of land owned by Mary Smith, of which this deed conveyed a part, is bounded on its southerly side by Eliot Street, and is located between Pleasant Street on the west, and the line of land of the Eliot heirs on the east. By subsequent deeds, the remainder of the land was conveyed in two lots. The distances as given on Eliot Street, in these three deeds, amount, in the whole, to ninety-six feet. It is now found that the actual distance, namely, between the line of the Eliot heirs and the line of Pleasant Street, exceeds by some eighteen inches the distance called for in these deeds. The line of Pleasant Street is now indicated by certain structures abutting thereon, which it is claimed show the line as it existed in 1781.

It must be assumed, in accordance with the proof offered by the tenant, that the line of the Eliot heirs is capable of accurate location, and constitutes a well defined and fixed boundary. Starting from this line, the deed to Innis requires the south and north sides to be run a distance of thirty feet, and bounds the land conveyed, on the west side, by other land of the grantor. There is no reference to any plans, or to other deeds, and no monuments are given as indicating the western termination of the north and south lines. There is therefore nothing to control the measurements given in the deed. *Blaney* v. *Rice,* 20 Pick 62. *Flagg* v. *Thurston,* 13 Pick. 145.

Under these circumstances, the ascertained excess in the south side of the whole original lot cannot be apportioned to the several purchasers. It appears that the lot last sold was next Pleasant Street; and, though its south line is described in the

deed as thirty-six feet, yet it is bounded on the west by that street; and, by the rule that monuments control distances, the excess must go to the last grantee, just as any deficiency would be borne by him.

When an excess or deficiency is found to exist in the estimated distance between fixed monuments, divided into a given number of lots, a rule of apportionment is sometimes applied, which divides the difference between the several lots, in proportion to the lengths of their respective lines. But this rule is only to be availed of when the land is conveyed by reference to a plan, or there is some declaration in the deed indicating a purpose to divide the land according to some definite proportion, and when also there is no other guide to determine the locations of the respective lots. *Lincoln* v. *Edgecomb,* 28 Maine, 275. *Brown* v. *Gay,* 3 Greenl. 126. The case here presented does not come within this description.

For these reasons the demandant fails to show a title by deed to the demanded premises. And the ruling that the house of the demandant, erected in 1801, to the exterior limit of the eaves is upon land granted to him, was erroneous.

Whether he has acquired title to the land demanded, out to the exterior limit of his eaves, by adverse occupation, is a question proper to be passed upon by the jury, as a question of fact. If the tenant, as the owner of the land up to the wall of the house, has continued in the occupation and visible use of it, it would seem that no adverse title to the land itself could have been acquired; nor to an easement therein, if the use were merely permissive. *Carbrey* v. *Willis,* 7 Allen, 364.

*Verdict set aside*