SEITZ *v.* PEOPLE'S SAVINGS BANK.

1. BOUNDARIES—CONTINUATION.
   As a general rule a boundary line marked part of the way will be continued in the same direction for the full distance.

2. ADVERSE POSSESSION—BOUNDARY LINE.
   Evidence in a case where the space between two dwellings was used wholly by the occupants of one, examined, and *held*, that whether such use was merely permissive, or hostile so as to vest title to the whole space in the user, irrespective of the lot line, was for the jury.

3. COVENANTS—BREACH—ACTION—EVIDENCE—HARMLESS ERROR.
   In an action for breach of the covenant of warranty in a deed, where it was undisputed that the plat, abstract, and advertised notice of the sale showed a lot 30 feet wide, error, if any, in admitting evidence that it was stated to plaintiff at the sale that the lot was 30 feet wide, is harmless.

4. SAME—DAMAGES—EXPENSE OF DEFENDING TITLE.
   Where a purchaser of property resold it, taking a mortgage for a part of the purchase price, and, on his attempting to foreclose the mortgage by advertisement, the mortgagor filed a bill to restrain foreclosure and unsuccessfully attempted to

have his claim for a deficiency of land adjudicated, the expense of defending the chancery suit could not be recovered by the original purchaser against his vendor in an action on the covenant of warranty, title to a portion of the land having failed.

5. SAME—ATTORNEY'S FEES.

A grantor of land is liable on his covenant of warranty for attorney's fees expended by the grantee in defending the title.

Error to Wayne; Mandell, J.   Submitted February 17, 1905.   (Docket No. 176.)   Decided May 12, 1905.

Covenant by Mabel Ward Seitz against the People's Savings Bank for breach of warranty in a deed.   There was judgment for plaintiff, and defendant brings error. Affirmed conditionally.

*Keena & Lightner*, for appellant.

*L. C. Stanley*, for appellee. ·

MONTGOMERY, J.   This action is brought to recover on a breach of covenants of warranty in a deed to plaintiff of property described as the west half of lot numbered twenty-nine (29) in section 9 of the Governor and Judges' Plan of the city of Detroit.   That the bank had title to a parcel of land at substantially the described location is not disputed.   The ground of recovery is that there was a shortage in the parcel.   It is undisputed that, according to the Governor and Judges' Plan, lot 29 is 60 feet in width.   The evidence on the trial disclosed that title to the east half of lot 28 (adjoining the property which is the subject of this controversy on the west) was in Fred R. Gartner.   The easterly half of lot 29 was owned by Mr. Simons.   The evidence on this trial showed that the line between the Gartner property and the bank property was marked by user, and a portion of the way by a fence at a place easterly of the surveyed line, but as defendant contends, and as the evidence fairly shows, that the line fixed by user had been established for much more than the statutory period, this

line could not be disturbed by a survey. It is the defendant's contention that the easterly line of the bank property was likewise fixed by user and adverse possession for a period of more than 15 years, and that this line was so fixed as to give the bank property substantially 30 feet in width for its entire length. This contention of defendant presents the important question in the case.

Plaintiff concedes that if the case presented is one of a mere shifting of the *location* of the various lots by an actual occupancy for the statutory period, and if each parcel contains the proper area, there is no cause for complaint; but it is insisted that this case distinctly concerns the quantity of land and not its location, and that, while there is a frontage of 30 feet, there is a shortage at the rear of the lot 2.15 feet, and that this shortage continues to near the front of the lot, leaving a gore-shaped shortage, so to speak. It is obvious, therefore, that an understanding of the evidence relating to the easterly line of the bank property and of its legal effect is essential. To one reading the record, it is equally obvious that it is difficult. The evidence tends to show that the parcel east of the bank property was occupied by a brick house; that between the walls of that brick house and the bank property was a passageway extending from the front to the rear of the bank (or Seitz) property, inclosed at either end with a lattice fence, having a door to admit of passage; that this passageway was used solely in connection with the bank property; that there was a walk next to the bank property occupying substantially one-half of this passageway to a point some 55 feet from the front, where steps were at one time erected leading into a side door of the Seitz house, and that a walk had been carried around these steps to the rear of the house, and that at the point opposite the steps this walk extended to the wall of the Simons house on the east. A shed on the Simons property extended westerly from the line of the main building 1.55 feet, and a brick barn at the rear of the Simons property extended easterly of the west line of the main wall of the house about 2.15

feet. The eaves of the Simons house overhung the walls 18 inches. The question presented is whether proof of occupancy of this character conclusively shows that the occupancy of this passageway was adverse and not permissive. The question was submitted to the jury as a question of fact. It is to be noted that there was at the most a conflicting occupancy. The eaves of the Simons house overhung the Seitz walk at the point where it extended around the steps and came up to the wall of the Simons house. The eaves were nearly in line with the line of the brick barn extended.

As a general rule, a line marked part of the way will be continued in the same direction for the full distance. 5 Cyc. 876; 4 Am. & Eng. Enc. Law (2d Ed.), p. 807. In view of this presumption, and of the actual location of the brick barn, and of the extension of the eaves westerly of defendant's claimed line, we think it was a question for the jury as to whether the various occupants of the Seitz house intended to assert a title adverse to that of the occupant of the Simons house. See *Carbrey* v. *Willis*, 7 Allen (Mass.), 364; *Smith* v. *Smith*, 110 Mass. 302; *Bloch* v. *Pfaff*, 101 Mass. 535.

Complaint is made of rulings of the circuit judge admitting evidence of statements made at the time of the sale to Mrs. Seitz showing that the parties understood that the property conveyed covered 30 by 100 feet. Complaint is also made of portions of the charge submitting that question to the jury. We do not think defendant has cause for complaint. The undisputed testimony shows that lot 29 of section 9 of the Governor and Judges' Plan was platted as a lot 60 by 100 feet, that the abstract which was shown to plaintiff showed the same area, and that the public advertisement of the sale stated that the lot was 30 by 100 feet. We think it must be held that plaintiff bought and was entitled to receive the quantity. *Jones* v. *Pashby*, 62 Mich. 614; *Heyer* v. *Lee*, 40 Mich. 353.

After receiving the conveyance from defendant, plaintiff resold the half lot in question to one William Mitchell,

who paid a portion of the purchase price and gave back a mortgage. On plaintiff attempting a foreclosure by advertisement, Mitchell filed a bill making Gartner, who occupied the premises lying west of the premises in question, a party, claiming that he (Mitchell) was entitled to have the full width of 30 feet, and that Gartner encroached upon him. The bank was also made a party to this proceeding, but procured the bill to be dismissed on its demurrer. Mrs. Seitz was also made a party, and the bill was dismissed as to her at the hearing, and costs awarded to her. The decree was without prejudice to a suit at law by Mitchell. Such suit was instituted, based on covenants of warranty in the deed of Seitz to Mitchell, and the bank was vouched in by Seitz, but declined to undertake the defense. Plaintiff incurred an expense of $25 in her defense to this last suit, and $100 in the chancery suit. The sum of $125 was included in the verdict in the present case as compensation for these expenditures. We think defendant was not properly chargeable for expenses incurred in the chancery suit. It appears that that proceeding was not one in which the claim of Mitchell against Seitz could be considered and determined. The bank is not to be charged with costs because of Mitchell's abortive attempt to transfer the controversy to chancery. The lawsuit stands on a different footing.

The defendant contends that counsel fees are not recoverable, but that the plaintiff's recovery should be limited to the purchase price of that portion of the land as to which the title failed, and taxable costs incurred in the suit determining the title. The cases are not agreed, but the better rule, in our opinion, and the one sustained by the weight of authority, is that the expenses of the defense of title, including attorney's fees, are recoverable. This was intimated in *Webb* v. *Holt*, 113 Mich. 338. See, also, 8 Am. & Eng. Enc. Law (2d Ed.), pp. 190 and 191, and cases cited; 11 Cyc. pp. 1176, 1177.

The judgment will be reversed, and a new trial ordered,

unless the plaintiff shall elect to remit $100 from the verdict and judgment.   If this course is taken, the judgment will stand affirmed, but without costs to either party.

CARPENTER, BLAIR, OSTRANDER, and HOOKER, JJ., concurred.