(100 South. 609)

No. 24548.

## NATTIN v. GLASSELL.

(April 30, 1924. Rehearing Denied by Whole Court June 7, 1924.)

*(Syllabus by Editorial Staff.)*

**1. Boundaries ☞1—Intention of parties governs in controversies arising from descriptions in deeds.**

The polar star in all boundary controversies arising out of descriptions in deeds should be, if it can be seen, intention of parties.

**2. Boundaries ☞13—Nonnavigable stream as boundary.**

When persons own property on either side of a nonnavigable stream, which is designated as boundary, center or thread of such water course is considered dividing line, unless different intention appears.

**3. Boundaries ☞3(3)—Natural or fixed monuments prevail over artificial guides.**

Natural or fixed monuments, such as water courses, hills, trees, etc., prevail over artificial guides, such as posts, courses, distances, quantity, etc., fixed and ascertained by human agencies, where other intention does not appear.

**4. Boundaries ☞14 — Deed giving certain quantity of land held not to include water.**

A deed to land described as bounded by certain water courses and a line so drawn as to include 80 acres *held* intended to give 80 acres of tillable land exclusive of water described as boundary; the banks and not the thread of the stream constituting the boundary.

**5. Deeds ☞8—Sales; first grantee entitled to receive quantity called for by deed.**

First grantee of portion of land is entitled to receive quantity which is called for by his deed, and subsequent grantee of adjoining tract, if there is any shortage in his tract, must fall back on his warrantors.

Appeal from First Judicial District Court, Parish of Caddo; J. R. Land, Judge.

Action by John H. Nattin against John Glassell. Judgment for plaintiff, and defendant appeals. Affirmed.

Hall & Bullock, of Shreveport, for appellant.

Murff & Mabry, of Shreveport, for appellee.

By Division B, composed of DAWKINS, ROGERS, and LECHE, JJ.

DAWKINS, J. This is an action to establish the boundary line between the properties of plaintiff and defendant. Both belonged originally to a common owner, who sold to plaintiff's ancestor in title under the following description, to wit:

"A tract or parcel of land contained 80 acres, situated in the southwest part of section 33, township 21 north, range fourteen (14) west, and a portion of section four (4) north of the Roaring slough in township 20 north, range 14 west, bounded on the north and west by the main prong of the Cow Hide bayou, and on the south by the Roaring slough on the east by a bayou running out of the main prong of the Cow Hide bayou near the center of said section thirty-three and keeping down the west prong of the said bayou to such point as a line running due south to the Roaring slough will include eighty acres of land."

Subsequently, through mesne conveyances, defendant became the owner of the property which adjoins the above tract on the east, and the dispute is as to whether the 80 acres of plaintiff is to be computed by taking the bank or beginning of the high land along Cow Hide bayou and Roaring slough as the northern, western, and southern lines of the tract, or whether the thread or center of the stream in each instance shall prevail. A survey of competent engineers discloses that adoption of the first as a basis of judgment would give the area in contest (26.22 acres) to plaintiff, while the latter would award it to defendant.

The following is a sketch of the locus in quo:

[1-3] The polar star in all controversies of this kind should be, if it can be seen, the intention of the parties. Of course, there are certain well-recognized rules, both in the statute law and jurisprudence, which serve as bearing signs in ascertaining such intention when it is otherwise obscure. Among these are that when persons own property on either side of a nonnavigable stream, which is designated as the boundary, the center or thread of such water course is considered the dividing line; and where one owning property on both sides sells a part, referring to the stream as boundary, the ownership extends to the thread, unless it clearly appears otherwise that a different purpose was intended. There are also such rules as that natural or fixed monuments, such as water courses, hills, trees, etc., prevail over artificial guides, such as posts, courses, distances, quantity, etc., fixed and ascertained by human agency. However, none of these is absolutely controlling. The duty of a court is, as stated above, to determine, if possible, the intention of the parties. Adm'rs Tulane Educational Fund v. Stair et al., 148 La. 11, 86 South. 595.

[4] If we adopt the contention of defendant in this case, we must ignore one important part of the description of plaintiff's property hereinabove quoted; that is, in order to give him "eighty acres of land" at some point in "keeping down the west prong" of Cow Hide bayou, a line should be run therefrom "due south to the Roaring slough"; for, if (as defendant claims) the thread of Cow Hide bayou is to be treated as the northern and western confines of the 80-acre tract, the east line will continue all the way down the east prong of that bayou and into the main channel without the necessity of dropping the line "due south" to Roaring slough, and there will still be included therein 80 acres of area. This, of course, would have the effect of reading out of the deed that

part of the description which calls for a line running due south from said east prong of Cow Hide bayou to Roaring slough, and would also have included, at the time the conveyance was made, 26.22 acres of water instead of land, leaving a net area of cultivatable land of 53.78 acres

On the other hand, if we treat the bank or beginning of the cultivatable land along these streams as the boundary, all of the calls of the deed will be brought into operation, and the required quantity of "eighty acres of land" (at the time) will be found.

Plaintiff's vendor went into possession, cleared and cultivated for many years the tract of land, including the strip now in dispute, with acquiescence of the former common owner, as well as that of subsequent holders of the property adjoining on the east. This condition and interpretation of the matter continued for some three decades, and until a short while before the filing of this suit, when defendant set up claim to it. Because of changed conditions in the Red river into which these streams drain, the water level has since fallen and parts of the former beds of the bayous have dried up and become subject to cultivation. In fact, plaintiff has fenced a part thereof, and defendant contends this amounts to a recognition of the idea that the said 80-acre tract extended into the bayou. However, neither defendant nor any one else appears to be disputing this latter area with plaintiff, and the circumstance cannot have a controlling effect upon the positive calls of the deed. Fellman v. Succession of Guitterez, 117 La. 736, 42 South. 252; Meyer v. Comegys, 147 La. 851, 86 South. 307.

[5] If there be any shortage in defendant's acreage, he must fall back on his warrantors; for, plaintiff's title having been first given by the common vendor, he is entitled to receive the quantity which is called for by his deed.

Our conclusion is that the judgment of the lower court recognizing the title of plaintiff to the property in dispute is correct, and it is accordingly affirmed, with costs.

LAND, J., recused.

Rehearing refused by the WHOLE COURT.