HUGHES *v.* YATES.

5-1455                                                    311 S. W. 2d 179

Opinion delivered March 10, 1958.

[Rehearing denied April 7, 1958]

*James W. Steinsiek* and *Oscar Fendler*, for appellant.

*Marcus Evrard* and *James M. Gardner*, for appellee.

GEORGE ROSE SMITH, J. This is a boundary line dispute involving a narrow triangular piece of land that separates the Hughes property to the north from the Yates property to the south. The chancellor decreed that the triangle in issue belongs to Yates and his wife, who were the plaintiffs.

In 1948 Ed Rogers, the common grantor of these litigants, owned a tract of land, then planted in cotton, lying on the east side of Highway 61 in or near Blytheville. This tract extended for 800 feet along the highway and was 400 feet in depth. Rogers decided to divide the tract into eight residential lots, each having a frontage of 100 feet on the highway. In selling the lots Rogers did not put on record a plat of the land; instead, he executed deeds containing metes and bounds descriptions based on the original government survey.

Apparently Rogers thought that his tract was a perfect rectangle, lying square with the compass, but in this he was mistaken. According to the government survey the north line of the section in which the Rogers tract was situated does not run exactly east and west. The angle at the northwest corner of the section is only eighty-nine degrees, so that the north line deviates southward by one degree as one travels from west to east. This deviation was in effect contained in the description of the Rogers tract when he acquired title in 1937. Furthermore, when Rogers decided to subdi-

vide his cotton field in 1948 his north line was marked by a fence which also deviated southward and which was owned by his neighbor to the north, Ada Tharpe Morgan.

On July 16, 1948, Rogers conveyed to Hughes and his wife the north two lots in the tract, having a frontage of 200 feet on the highway. This deed was recorded on July 27. The description in this deed proceeds to the northwest corner of the Rogers tract for a point of beginning and then continues: ". . . and run thence East along the South line of lot owned by Ada Tharpe Morgan a distance of 400 feet, thence South 200 feet, thence West 400 feet to the East right-of-way line of U. S. Highway No. 61, thence North along the East right-of-way line of said U. S. Highway No. 61 a distance of 200 feet to the point of beginning."

On August 6, 1948, Rogers conveyed to Yates and his wife the next lot to the south, having a frontage of 100 feet on the highway. The description in this deed proceeds to a point 200 feet south of the northwest corner of the original Rogers tract, for a point of beginning, and then continues: ". . . and run thence East 400 feet, thence South 100 feet, thence West 400 feet to the East right-of-way line of U. S. Highway No. 61, thence North along the East right-of-way line of U. S. Highway No. 61 a distance of 100 feet to the point of beginning."

The two couples built houses on their respective lots and had lived in them for some seven years when this suit was filed in 1956. The Yateses attempted to bolster their position by a claim of title by adverse possession; but the chancellor rejected this contention, and his conclusion is supported by the weight of the evidence. The issue thus narrows down to that of determining the legal effect of the two deeds in question.

The Hughes deed was executed and recorded before that of Yates; so its description is controlling if the two descriptions overlap. The Hughes description begins at the northwest corner of the Rogers tract and

runs "thence East along the South line of lot owned by Ada Tharpe Morgan a distance of 400 feet," thence south 200 feet, thence west 400 feet to the highway, and thence north 200 feet to the point of beginning. It is evident that the first call must be taken to run along the Morgan boundary fence, rather than due east, under the familiar rule that courses must yield to natural or artificial monuments. *Paschal* v. *Swepston*, 120 Ark. 230, 179 S. W. 339; *Meyer* v. *Board of Imp. of Pav. Dist. No. 3*, 148 Ark. 623, 231 S. W. 12. This construction is in this instance confirmed by the fact that Rogers' own boundary line also deviated to the south, and it is not to be presumed that he attempted to convey land that he did not own.

With the north line of the Hughes lot thus established as running slightly south of due east (the variation amounts to 8.2 feet along the eastern boundary), we think it clear that the effect of the Hughes deed is to describe a parallelogram, 200 by 400 feet in size. The parties evidently intended for the east and west lines of the Hughes parcel to be 200 feet in length and for the opposite sides to be parallel.

The Yates deed, unlike the Hughes deed, makes no reference to the Ada Tharpe Morgan line; it simply describes an exact rectangle, lying square with the compass. Hence the two descriptions actually overlap to the extent of the triangle in controversy, and Yates is in the unfortunate position of having received a deed to property that his grantor had already sold to someone else.

During our study of the case it has been suggested that the shortage should be apportioned between the two grantees, but that principle is not applicable here. An apportionment is appropriate when lots are sold by reference to an erroneous plat that shows more land than is actually owned by the common grantor. "But this rule is only to be availed of when the land is conveyed by reference to a plan, or there is some declaration in the deed indicating a purpose to divide the land according to some definite proportion, and when also

there is no other guide to determine the locations of the respective lots." *Bloch* v. *Pfaff,* 101 Mass. 535; accord, *Adams* v. *Wilson,* 137 Ala. 632, 34 So. 831. Here there was no plat nor any reference in the Hughes deed to a comprehensive plan on the part of Rogers. If such a plan existed it was only in the mind of Rogers, and he was at liberty to abandon it after executing the conveyance to Hughes. In these circumstances the Rogers-Hughes deed must be given the construction that it would have received in a controversy between the grantor and the grantee; its legal effect cannot be altered by the extraneous fact that Rogers later executed an independent deed containing an overlapping description.

Reversed and remanded for the entry of a decree granting the appellants' prayer that their title to the disputed triangle be confirmed.

McFADDIN, J., dissents.

ED. F. McFADDIN, Associate Justice, dissenting. I am of the opinion that the decree rendered by the Chancery Court should be modified rather than reversed. The purpose of this dissent is to call attention to a rule that the majority has refused to apply. A detailed factual statement is necessary to show why I consider the rule to be applicable.

There is involved only a triangular strip tapering from a point to a width of 12.22 feet at the base. The real cause of the suit is the fact that the north line of Section 10, here involved, does not run due east and west. The west side of Section 10 is on a true north and south line. The north line of Section 10 should run due east from the northwest corner; but, instead, the line actually runs one degree forty-five minutes south of due east; and this variation to the south of due east amounts to a variation of 12.22 feet in a distance of 440 feet to the east. As aforesaid, this variation of the north line of Section 10 accounts for this lawsuit.

The center line of U. S. Highway No. 61 is the west side of Section 10. The highway right-of-way is eighty

feet wide, so that forty feet of the right-of-way is taken off the west side of Section 10; and all of the lots here involved have been laid off facing west on the U. S. Highway. A parcel of land referred to as the "McGhee Lot" is in the extreme northwest corner of Section 10 and fronts on U. S. Highway No. 61. The south line of the "McGhee Lot" is parallel with the north line of Section 10; i.e., runs east one degree forty-five minutes south. Immediately south of the "McGhee Lot" there is a lot owned by Ada Tharpe Morgan, fronting on U. S. Highway No. 61. The south line of the Morgan lot is likewise parallel with the north line of Section 10; i.e., runs east one degree forty-five minutes south.

Immediately south of the Morgan lot, Ed Rogers owned a tract that had a frontage of eight hundred feet on U. S. Highway No. 61 and a depth of four hundred feet; and was bounded on the south by Marr Avenue in the City of Blytheville. Rogers divided his tract into eight lots, each with a frontage of one hundred feet on U. S. Highway No. 61, and each having a depth of four hundred feet to the east. He sold his lots by metes and bounds rather than by lot and block designation. But the fact that the lots were sold in accordance with a common *plan* is shown by the dates of the various deeds from Rogers to his grantees covering the eight lots. The dates of the deeds of these lots (considering the lots from north to south) are as follows: Rogers to Hughes, July 16, 1948; Rogers to Yates, August 6, 1948; Rogers to Reece, July 24, 1948; Rogers to Hall, July 24, 1948; Rogers to Huffman, July 19, 1948; and Rogers to Marr, July 16, 1948.

Appellant Hughes purchased from Rogers his two most northern lots[1] (adjoining the Morgan property), and thus had a frontage of two hundred feet on U. S. Highway No. 61, with a depth of four hundred feet. A short time

---

[1] The description in the deed from Rogers to Hughes is as follows: "Beginning at a point 466 feet and 8 inches South of the intersection of the North line of Section 10, Township 15 North, Range 11, with East right-of-way line of U. S. Highway No. 61, and *run thence East along the South line of lot owned by Ada Tharpe Morgan a distance of 400 feet*, thence South 200 feet, thence West 400 feet to the East right-of-way line of U. S. Highway No. 61, thence North along the East right-of-way line of said U. S. Highway No. 61, a distance of 200 feet to the point of beginning." (Italics my own.)

later, Appellee Yates purchased the lot[2] just south of Hughes, and had a frontage of one hundred feet on U. S. Highway No. 61 with a depth of four hundred feet to the east. The Hughes south line was and is the Yates north line; and that is the line in dispute in this litigation.

When Yates purchased his lot there was a well identified stake at the *southeast* corner of his lot; and the south line of Yates' property runs true east and west from his southwest corner to his southeast corner. The trouble arose between Hughes and Yates when it was discovered by them that the distance from Hughes' *northeast* corner to Yates' *southeast* corner was only 287.88 feet instead of being three hundred feet, as their deeds stated. Hughes insisted that he was entitled to his full two hundred feet; and Yates insisted that he was entitled to his full one hundred feet. There had been no possession by either party for sufficient time to work any limitations; neither had there been any agreed boundary. When Hughes undertook to move Yates' fence, Yates invoked equity for relief. The Chancery Court gave Yates the prayed relief, and Hughes has appealed.

When Hughes and Yates discovered a total shortage of 12.22 feet on their combined east lines, these litigants had at least three courses open to them: (a) they could have called on their common grantor to make good any shortage; (b) they could have interpleaded all other owners[3] of lots down to Marr Avenue and asked for a general determination; (c) or they could have taken the course that they have actually pursued; i.e., litigate between themselves as to their boundary line. Absent—as here—(a) any sufficient evidence of adverse possession, and (b) any evidence of agreed boundary; but established —as here—a shortage of 12.22 feet on the back (or east) line of their lots, then these two litigants, as between

---

[2] The description in the deed from Rogers to Yates is as follows: "Beginning at a point 666 feet and 8 inches South from where the North line of Section 10 aforesaid intersects the East right-of-way line of U. S. Highway No. 61, and run thence East 400 feet, thence South 100 feet, thence West 400 feet to the East right-of-way line of U. S. Highway No. 61, thence North along the East right-of-way line of U. S. Highway No. 61 a distance of 100 feet to the point of beginning."

[3] I have named the other owners and the dates of their deeds from Rogers to show that Rogers sold his property under a common plan.

themselves, should apportion their shortage in proportion to their deed calls; i.e., Hughes was supposed to have two hundred feet and Yates one hundred feet, or a total of three hundred feet. There is a distance of only 287.88 feet, or a shortage of 12.22 feet. The shortage of 12.22 feet should be absorbed two-thirds by Hughes and one-third by Yates; that is, Hughes should absorb 8.1466 feet of the shortage and Yates should absorb 4.0733 feet of the shortage. This would mean that Yates would begin at his southeast corner and go north on his east line only 95.9266 feet to reach his northeast corner. Then Hughes would begin at Yates' said northeast corner and go north on Hughes' east line 191.8533 feet to Hughes' northeast corner, which will reach the south line of the Morgan lot.

In arriving at the result just stated I have applied the rule given by the textwriter in 8 Am. Jur. 796, ''Boundaries,'' § 71, which is as follows: ''If, after a tract of land has been subdivided into parts or lots and title thereto has become vested in different persons, it is discovered that the original tract contained either more or less than the area assigned to it in a plan or prior deed, the excess should be divided among, or the deficiency borne by, all of the smaller tracts or lots in proportion to their areas. . . . The sequence of lot numbers on the plat of lots is immaterial in the application of the rule. The sequence of sale of the lots is likewise immaterial. . . .'' Cases supporting the text are found in the annotations contained in 97 A. L. R. 1230; Ann. Cas. 1912A, p. 1273; 23 A. S. R. 392; and 45 A. S. R. 186. I call attention to the fact that the quoted language says *''plan''* and not *''plat'';* and I have shown the *''plan''* by giving the dates of the deeds from Rogers; so I consider the quotation above to be the applicable rule of law in the case at bar.

Had the present litigants seen fit to interplead all the other lot owners down to Marr Avenue, the entire shortage of 12.22 feet *might* have been apportionable between all of the eight lots sold by Rogers; but when the present litigants elected to settle the difficulty between themselves alone, then—as I see it—they should absorb, between themselves alone, the entire 12.22 feet shortage on the east end of their lots. The decree rendered by the

Chancery Court reached a result only slightly different from the views herein expressed; but I would remand the cause for a decree to be entered in accordance with this dissent.