Francis L. CADY and Marguerite M. Cady,
Appellants (Plaintiffs below),

v.

Henry F. SLINGERLAND, Appellee
(Defendant below).

No. 4220.

Supreme Court of Wyoming.

Oct. 15, 1973.

J. T. Langdon, Worland, Hettinger &
Leedy, Riverton, for appellants.

W. A. Smith and George L. Simonton,
Lander, for appellee.

Before PARKER, C. J., and McEWAN,
GUTHRIE, McINTYRE and McCLIN-
TOCK, JJ.

Justice McINTYRE delivered the opin-
ion of the Court.

Francis L. Cady and Marguerite M. Cady,
husband and wife, sued Henry F. Slinger-
land asking that a lease agreement between
plaintiffs as lessees and Slingerland as
lessor be rescinded and the parties return-
ed to the status they were in prior to the
agreement. Slingerland, in a counterclaim,
alleged delinquent rental payments (as of
October 16, 1971) in the amount of $88,023.-
42 and demanded immediate possession of
all his cattle, machinery, buildings and
lands. The district court found generally
in favor of Slingerland and its judgment

provided that Slingerland recover from Cadys the sum of $80,806.92 as past rental payments, together with possession of livestock, machinery, land and buildings owned by Slingerland, and further that Slingerland have a lien on the remaining livestock owned by Cadys. The Cadys have appealed; and the grounds of appeal asserted by them are these:

"1. The trial court erred in failing to award Cady operating expenses and reasonable compensation for the management of the ranches for the period commencing December 31, 1971, through October 31, 1972.

"2. The money judgment of the trial court compels full performance by Cady of the agreement between the parties, and constitutes a forfeiture and imposes a penalty upon Cady. The trial court erroneously concluded that Cady had no equity in the Red Canyon Ranch."

### Compensation For Management

Insofar as the assigned errors are concerned, there seems to be no material dispute of facts. It is undisputed that Francis L. Cady and Marguerite M. Cady were the owners in fee of a ranch in Fremont County, known as the Red Canyon Ranch. This ranch was sold by them to Henry F. Slingerland and conveyed by an ordinary warranty deed.

The sale included certain livestock, machinery and ranch equipment. The record indicates the Cadys received sufficient cash from Slingerland to reimburse all of their cash outlay in the ranch and personal property. The balance of the purchase price was made up by liens and indebtedness which Slingerland assumed.

As a part of the consideration for the purchase by Slingerland, he agreed to lease and did lease the Red Canyon Ranch, together with another ranch and farm owned by him, to the Cadys, for a term of 20 years from and after July 1, 1967. The Memorandum of Agreement pertaining to the lease is very complete and details without

ambiguity all of the terms agreed upon between the parties. The instrument deals fully with all contingencies contemplated; and no claim is made that it does not fairly represent and state the agreement of the parties.

It does not appear that any question concerning terms of the lease arose until the lessees initiated the action in this case by filing their original complaint October 14, 1971. That was more than four years after the lease had taken effect. It was also after Slingerland had served notice of default on the Cadys.

The notice of default stated that lessees were in default by failure to pay the rental due to date; by failure to provide lessees' own operating funds; and failure to maintain an additional herd of not less than 300 cattle over and above those owned by lessor. Lessees were notified that, if these defaults were not corrected within six months, the Memorandum of Agreement would be terminated and Slingerland would expect to take possession of the ranch, his livestock, and the machinery and equipment.

The original complaint alleged that Slingerland had failed to furnish certain bulls and breeding cows in the numbers and quality specified in the lease agreement and had otherwise breached the lease contract; and that because of these breaches lessees had been unable to perform their part of the lease agreement. The position taken by lessees in the original complaint was that the lease agreement should be rescinded in all respects and the parties returned to the status they were in prior to entry into the agreement.

Other claims for relief were asserted; but there was no claim for compensation to the Cadys for operating expenses and management of the ranches during any period of time. No such claim could have been made for the period commencing December 31, 1971 through October 31, 1972, since the original complaint was filed prior to the beginning of that period.[1]

---

1. Trial was had in this case beginning May 24, 1972, and judgment was entered October 31, 1972. The judgment ordered that the Memorandum of Agreement "be and the same

On February 2, 1972 the Cadys filed an amended complaint. In this complaint they alleged the parties had agreed upon an oral modification of the written agreement and set up as a cause of action allegations of unjust enrichment. They again asserted that the lease agreement should be rescinded and the parties returned to their former status.

As we view the record, the district court has not foreclosed the possibility of the Cadys, in a proper suit therefor, claiming compensation for services rendered in managing appellee's ranches during the period in question. The trial judge indicated in a preliminary letter opinion that the Cadys would be entitled to be reimbursed for operating the ranches from January 1, 1972 to the date of the judgment. He stated, however, that no competent evidence was adduced pertaining to this matter. In the final judgment he deleted and initialed a finding which copied what had been stated pertaining to this matter in his preliminary letter opinion.

Counsel for Slingerland does not dispute the right of plaintiffs to sue, in some other action, for reasonable compensation for management of the ranches from December 31, 1971 through October 31, 1972. He merely argues that the matter of compensation for services rendered by the Cadys during that period was never an issue in this case—by pleading or otherwise.

No doubt we could uphold the judgment of the district court, specifying that nothing in such judgment or in our opinion should be construed as foreclosing the right of the Cadys to sue separately for operating expenses and reasonable compensation for management of the ranches from December 31, 1971 through October 31, 1972. However, the same result would be obtained merely by remanding the present case to the district court for further proceedings and a determination of the amount of compensation, if any, which should be allowed to appellants for their services during the period involved.

■ The case at hand is a suit in equity where the Cadys seek to rescind a contract and Slingerland seeks to terminate a lease. Where justice requires it, an equity decree will be addressed to the rights existing, not at the commencement, but at the time of the determination, of the suit; and equity principles are applied to the status of the case and the parties as they stand at the time relief is administered by decree rather than at the date of the institution of the suit. 30 C.J.S. Equity § 89, p. 983.

Another general statement of this principle is found in 30A C.J.S. Equity § 600, p. 672, in the following language:

"While it has been held that a decree in equity operates on the parties and subject matter as they stood at the commencement of the suit, it does so only to subserve the ends of justice, and in general an equity decree is addressed to the rights existing, not at the commencement of the suit, but at the time of the determination of the suit or date of the decree, particularly where a radical change in the ultimate rights of the parties has been brought about by the passing of time, and knowledge of this change is judicially before the court or is brought in by appropriate pleading * * *."[2]

■ Inasmuch as no effort has been made to adjust equities between the parties with respect to rights existing, not at the

is hereby terminated, cancelled and forever held for nought as of December 31, 1971."

2. Cases which hold generally to the effect that, when equity has jurisdiction of a cause and decides that relief should be granted, the relief, if any, will be tailored to suit the situation as it exists on the date relief is granted include: Tenney v. Jacobs, 43 Del.Ch. 526,

240 A.2d 138, 140; In re Campbell's Estate, 46 Haw. 475, 382 P.2d 920, 962; Kress v. West Side Tennis Club, 57 Misc.2d 772, 293 N.Y.S.2d 666, 669; Stonega Coke & Coal Co. v. Price, 106 F.2d 411, 419–420, modifying Price V. Stonega Coke & Coal Co., D.C., 26 F. Supp. 172, cert. den. 308 U.S. 618, 60 S.Ct. 263, 84 L.Ed. 516; Giles v. Giles, 293 Mass. 495, 200 N.E. 378, 380

commencement of the suit, but at the time of the determination of the suit and entry of the decree, we deem it necessary to remand the case for further proceedings, with instructions to pass upon and determine whether or not compensation should be allowed to plaintiffs for management of the ranches from December 31, 1971 through October 31, 1972; and for the determination of the amount of such compensation in the event it be found to be proper, giving consideration to whatever offsets there may be. If supplemental pleadings, or the taking of additional evidence, are found to be necessary for this determination the court should proceed accordingly.

### Forfeiture

■ Appellants complain in their second assignment that the money judgment of the trial court compels full performance by Cadys of the agreement between the parties and constitutes a forfeiture and imposes a penalty upon Cadys. We know of no reason why full performance by the Cadys should not be compelled. If a forfeiture has resulted, the question would be whether it is in any way unjust, inequitable, contrary to the agreement of the parties, or otherwise improper.

On behalf of appellants much authority is cited for the general proposition that forfeitures are not favored. We have no occasion to say otherwise. However, no cogent reason is given and no authority is called to our attention for saying there has been an unjust, inequitable, or unlawful forfeiture. Also, no cogent argument or citation of authority has been given for appellants' statement, in assignment 2, that the trial court "erroneously" concluded that Cady had no equity in the Red Canyon Ranch.

■ Regarding plaintiffs' right to have the lease agreement rescinded on account of alleged breaches, the trier has found against plaintiffs and his finding is supported by substantial evidence. Moreover, the supposed breaches relied on by the Cadys pertain to events in 1967. Lessees neither demanded a rescission of the contract nor took any action in that regard for approximately four years; and they must be considered to have waived any possible right of rescission.

■ Generally, if there is a substantial breach of a contract, the injured party may rescind such contract; but the right of rescission mut be exercised promptly. Anderson v. Bell, 70 Wyo. 471, 251 P.2d 572, 576. See also Fryer v. Campbell, 48 Wyo. 122, 43 P.2d 994, 997; Tober v. Charnita, Inc., D.C., 58 F.R.D. 74, 80; and Johns Hopkins University v. Hutton, D.C., 326 F.Supp. 250, 261.

■ According to appellants' brief, they are asking that the court's decree restore to Cadys the title and right to possession of the Red Canyon Ranch, with appurtenant leases and permits, together with the machinery and livestock, subject to the condition that Slingerland be reimbursed his entire purchase price for such assets. This, of course, would require more than a mere rescission of the lease agreement. It would require reformation or a setting aside of the warranty deed from the Cadys to Slingerland.

We find no allegation or proof of fraud or mutual mistake or any other circumstance which would cause a court of equity to set aside or reform the warranty deed from the Cadys to Slingerland. In Pfister v. Brown, Wyo., 498 P.2d 1243, we recently discussed the reformation of instruments on account of mistake. In this case there is no showing of a mistake or fraud or of any other reason to reform Slingerland's warranty deed and we will not pretend to set it aside or reform it in any respect.

Concerning appellants' first assignment, the case is remanded for further proceedings in accordance with the instructions we indicated earlier in this opinion. Concerning appellants' second assignment, we find no reversible error and the judgment of the district court, insofar as it relates to matters involved in the second assignment, is affirmed.