Ronald A. CONDOS and Arlys K. Condos, Appellants (Plaintiffs and Counter-Defendants),

v.

William Ernest TRAPP and Deborah Gaye Trapp, Appellees (Defendants, Counter-Plaintiffs, and Third-Party Plaintiffs),

v.

Paul A. GRANGER and Rosalind J. Granger, husband and wife, John D. Lettz and Bonnie Lettz, husband and wife, Jerry A. Wilson and Susan J. Wilson, husband and wife, Waldo A. Ballhorn and Lavonne M. Ballhorn, husband and wife, (Third-Party Defendants).

No. 84–62.

Supreme Court of Wyoming.

April 22, 1986.

Rehearing Granted May 28, 1986.

Robert W. Brown, Lonabaugh & Riggs, Sheridan, for appellants.

Robert W. Koester, Sheridan, for appellees Trapps.

Micheal K. Shoumaker, Sheridan, for third-party defendants Lettz and Wilson.

Before THOMAS, C.J., ROSE *, ROONEY ** and CARDINE, JJ., and RAPER, J., Retired.

THOMAS, Chief Justice.

The sole question which we must resolve in this appeal is whether the last grantee, whom the parties agree must bear the loss attributable to a deficiency in a tract of land conveyed in separate grants by a common grantor, is to be determined according to the order of the deeds or according to the order of recording the deeds pursuant

* Retired November 1, 1985.

** Retired November 30, 1985.

to § 34–1–120, W.S.1977. Section 34–1–120, W.S.1977, provides:

"Every conveyance of real estate within this state, hereafter made, which shall not be recorded as required by law, shall be void, as against any subsequent purchaser or purchasers in good faith and for a valuable consideration of the same real estate or any portion thereof, whose conveyance shall be first duly recorded."

The district court granted a summary judgment in this case based upon application of the recording statute. We agree with that conclusion and affirm the district court.

In the Appellants' Brief, the issues presented for review are stated to be the following:

"I. Where real estate is subdivided into smaller parcels without reference to a plat or plan, and there is insufficient land to satisfy the legal descriptions of all parcels, which Grantee must bear the deficiency?

"II. Whether the trial Court properly applied the Wyoming Recording Statute, W.S. § 34–1–120 in determining who was the last Grantee who should bear the deficiency.

"III. Whether the affidavits presented by Defendants were sufficient to permit the trial Court to deny Plaintiffs' Motion for Partial Summary Judgment, and grant Defendants' Motion for Summary Judgment."

In the Appellees' (Trapps') Brief, the only issue articulated is this one:

"The sole issue presented for review is whether a deficiency of real property within a specified tract should be borne by the grantees of a Warranty Deed executed last or by the grantees of a Warranty Deed filed of record last. The other points raised by the Appellants as issues are irrelevant and shall be addressed in the Appellees' arguments."

In the Brief for John D. Lettz, Bonnie Lettz, Jerry A. Wilson and Susan J. Wilson, Third-Party Defendants, the issue which is stated is this:

"The only issue is whether the party to bear the land deficiency of 28.8 feet is the first grantee or the grantee to record his deed first."

In the dissenting opinion the question raised is whether there is any need to identify the last grantee among the parties to this appeal because of a factual conclusion that the only conflict in deeds occurred between the appellees Trapps and the Ballhorns who are not parties to this appeal.

A number of years prior to the conveyances which are in question in this case, R.W. McNally and Lois M. McNally executed a Certificate of Dedication for McNally Third Subdivision located in Sheridan County. Tract 19 is an irregularly shaped tract of realty, but its southern border is a straight line. The certificate of location shows the southern boundary of Tract 19 to be 1229.3 feet long. Subsequently, the McNallys sold the entire tract to common grantors of the several parties in this litigation. The common grantors of all of these parties are the Grangers who conveyed lots in Tract 19 in the following order: (1) Hammonds (the common grantor of the Lettzes and Wilsons) on June 12, 1975; (2) the Ballhorns on March 31, 1977; (3) the Condoses on March 1, 1978; and (4) the Trapps on March 2, 1978. The following schematic diagram does not reflect the true shape of the land, but it does generally show the relationship of the parties' properties.

| | | | LETTZES | |
|---|---|---|---|---|
| B A L L H O R N S | T R A P P S | C O N D O S E S | | HAMMONDS |
| | | | WILSONS | |

---

The deeds to the several parties were recorded in this order: (1) Ballhorns on March 31, 1977; (2) Trapps on March 3, 1978; (3) Condoses on March 16, 1978; (4) the Hammonds on August 17, 1978.

This dispute arose when the Trapps placed a fence between their property and the Condoses'. The Condoses filed a complaint against their neighbors alleging that the Trapps had misplaced the fence and praying for repossession of their land and for rents on the land wrongfully withheld from them. The Trapps answered, and filed a counterclaim against the Condoses, together with a third-party complaint against the other landowners in the tract: the Lettzes, the Wilsons, and the Ballhorns, seeking to quiet their title in the disputed property. Only after the litigation was commenced did any of these landowners seek a survey of the property. At that time it was discovered that the southern boundary of Tract 19 is only 1200.5 feet long. The only question to be resolved was who was to bear the loss of the 28.8 feet not contained in the property.

After issue was joined, the Condoses filed a Motion for Partial Summary Judgment, and that was followed by a Motion for Summary Judgment on all issues filed by the Trapps. In support of their positions both the Condoses and the Trapps argued that the last grantee must bear the loss. The district court granted summary judgment in favor of the Trapps and denied the partial summary judgment sought by the Condoses. The effect of the summary judgment was that the Lettzes and Wilsons

were required to quitclaim a 28-foot strip of land to the Condoses, and the Condoses were required to quitclaim a 28-foot strip of land to the Trapps. While the Condoses then held a different tract of land from that which they previously had believed they owned, the tract is of the same size. Ultimately, the loss because of the shortfall in the area of Tract 19 must be borne by the Lettzes and Wilsons according to the judgment of the district court. The Condoses, Lettzes and Wilsons have appealed from that judgment.

The parties to this case are in accord that in circumstances such as this, in which there is no other way to determine who actually received a conveyance of a deficient area of land, the last grantee must bear the loss. The contention of the dissenting opinion is that the record supports another way of determining who actually received a conveyance of a deficient area of land, and for that reason we need not decide the case which the parties have presented.

In their memorandum with respect to the summary judgment motions the Trapps contended that the last grantee to record is identified as the last grantee. The memorandum which the Condoses presented advanced the same rule, but the Condoses contended that the last grantee to receive his deed is the last grantee. In this appeal, the Condoses, as appellants, maintain their original position that the last grantee is the last to receive a deed. The Trapps, as appellees, now contend that the recording statutes "constitute a comprehensive statu-

tory scheme" which mandates that the last person to record must bear the loss resulting from the deficiency in the land. The dispute of the parties still is only over the method of determining the last grantee, and this is the question submitted to the court for resolution.

The Trapps were the last grantees to receive a deed, and the other parties contend that they should bear the loss. This also would be the resolution proposed by the dissenting opinion. The Hammonds, who were the predecessors in interest of the Lettzes and the Wilsons, recorded their deed last, and the Trapps contend that the loss in area must be taken from their grant. Authority addressing the question is not plentiful. *Holmgren v. Bondhus,* 311 Minn. 157, 247 N.W.2d 608 (1976).

In many respects this case appears to be unique. It does not involve any of the peculiarities which in part were found dispositive in other cases. No deed in this instance is clearly erroneous. Compare *Hughes v. Yates,* 228 Ark. 860, 311 S.W.2d 179 (1958). All the deeds described the property in metes and bounds. Compare *Holmgren v. Bondhus,* supra; *Waldorf v. Cole,* 61 Wash.2d 251, 377 P.2d 862 (1963). No reference is made in any of these deeds to the property described in the other deeds. Compare *Long v. Ragan,* 94 Md. 462, 51 A. 181 (1902); *Howe v. Cornish,* 146 Misc. 799, 262 N.Y.S. 830 (1933). No deed in this case refers to monuments (the Ballhorn deed makes reference to the road on the west, but the monument-over-distance rule, as applied to the Ballhorn deed, is not helpful in disposing of this dispute). Compare *Bloch v. Pfaff,* 101 Mass. 535 (1869). None of the deeds uses uncertain language as respects the south boundary. Compare *Long v. Ragan,* supra. The grantees in this instance did not rely on several surveys. Compare *Adams v. Wilson,* 137 Ala. 632, 34 So. 831 (1903). The problem is that the original description of Tract 19 was erroneous, and that erroneous description was relied upon in the deeds from the Grangers to the several grantees.

It is readily apparent that no grantee in this case would have any notice of the deficiency of land in the tract absent a survey. None of the deeds conflicted, and, even if recorded, they would not provide notice of the shortfall in the tract. A survey of any individual parcel of land would not necessarily have revealed a discrepancy between the total footage conveyed and the actual footage contained in the tract. Because of these factors, the common law developed an exception to the general rule that a shortfall or excess in land in a tract should be divided equally among the grantees. 12 Am.Jur.2d, Boundaries, § 63, pp. 600–601. The exception is that when there is no reference to a plat or plan, the last grantee is the one who must bear the shortfall or alternatively is benefitted by receiving the excess. Often situations arise in which some peculiar fact or description is dispositive of the question, and the courts do not have to invoke the last grantee rule. No such argument or circumstance was submitted to the trial court or this court in this case, however. The issue submitted for the court to decide was premised upon the last grantee rule and simply asks how the last grantee will be identified. Is it the last to receive a deed under the common law, or is it the last to record under our recording statute?

Essentially the Condoses depend upon a simple application of the common-law proposition that a grantor cannot convey what he does not own, and they urge that concept to be dispositive of this case. According to their argument, when a common-law grantor did not have sufficient land left to satisfy the last executed deed (the one to the Trapps in this instance), the last deed is operative to convey only what the grantors had left, and it follows that the Trapps should bear the loss. This argument accurately reflects the common-law rule that a second conveyance of land already conveyed was not possible because the grantor had nothing left to convey. *Hruby v. Lonseth,* 63 Wash. 589, 116 P. 26, 27 (1911); *Nattin v. Glassell,* 156 La. 423, 100 So. 609, 610 (1924); *Mechler v. Dehn,* 203 App.Div. 128, 196 N.Y.S. 460 (1922),

aff'd mem., 236 N.Y. 572, 142 N.E. 288 (1923). We accept the common-law principle that the last grantee must bear the loss because the common law still is the law in Wyoming unless abrogated by statute. *State ex Rel. State Highway Commission v. Meeker,* 75 Wyo. 210, 294 P.2d 603 (1956). See also *Torgeson v. Connelly,* Wyo., 348 P.2d 63, 72 (1959); *Low v. Sanger,* Wyo., 478 P.2d 60, 63 (1970).

While as we have noted the recording statute would not provide protection in this instance because the deeds do not conflict, we conclude that the policy of the recording statute (to protect those who record first, to establish certainty in records, and to avoid losses such as this) ought to be invoked. Even though the predecessors in title of the Lettzes and the Wilsons were the first grantees, the Ballhorns, the Trapps and the Condoses all recorded their deeds before the predecessors of the Lettzes and the Wilsons.

In such a situation the Trapps would have been entitled to have their deed reformed on grounds of mutual mistake to include an additional 28 feet had they discovered the error before the Condoses or the Hammonds recorded. *Crompton v. Bruce,* Wyo., 669 P.2d 930 (1983); *Waters v. Trenckmann,* Wyo., 503 P.2d 1187, 1191 (1972); *Tucker v. Reynolds,* Wyo., 429 P.2d 326, 328 (1967); *Russell v. Curran,* 66 Wyo. 173, 206 P.2d 1159, 1163–1167 (1949). Compare *Peterson v. First National Bank of Lander,* Wyo., 579 P.2d 1038, 1041 (1978); *Cady v. Slingerland,* Wyo., 514 P.2d 1147, 1150 (1973); *Pfister v. Brown,* Wyo., 498 P.2d 1243, 1244 (1972); *Holland v. Windsor,* Wyo., 461 P.2d 47, 50 (1969). The Condoses, under the same assumption, then would have been permitted to have their deed reformed to insure that they received the area which had been deeded to them. The Hammonds, the last in line, would not have been entitled to have their deed reformed because at that juncture the Grangers would have had no land with which to make up the deficit.

The Arkansas Supreme Court in *Hughes v. Yates,* supra, applied these equitable principles in conjunction with the recording statute. In that case the common grantor mistakenly believed that he owned a tract of land that was a perfect rectangle. The north line of the tract did not run exactly east and west but instead the angle deviated one degree so that the north line moved southward by one degree as it was followed from west to east. The common grantor executed a deed to Hughes which was recorded before the deed to Yates was executed. The Hughes deed relied upon a property line between Rogers and a neighbor to the north. That line described the north boundary of the Hughes tract. It was this line that had a southward deviation of one degree. In the deed to Yates a metes and bounds description was used which commenced at a point 200 feet south of the northwest corner of the original tract. The result was that because of the southward deviation a wedge-shaped area of land some 12.22 feet wide at its base overlapped in the two deeds. The Arkansas court resolved the dispute by according to the first deed the construction it would have received in a controversy with the grantor, and it then corrected the first deed according to those principles. Because the descriptions in the two deeds actually conflicted the second grantee was left "in the unfortunate position of having received a deed to property that his grantor had already sold to someone else." *Hughes v. Yates,* supra, 311 S.W.2d at 181. The Arkansas court gave to the first deed the construction it would have received in a controversy between the grantor and the grantee because there was no plat or plan of record. The court held that the legal effect of that first deed could not be altered by the extraneous fact that the grantor later executed an independent deed which contained an overlapping description.

■ Similarly in this instance we must address the question of who is the last grantee because of the mistake as to the amount of land owned by the common grantor. In resolving that question we must consider whether the common law rule which identified the last grantee as the

one who last received his deed has been changed by our recording statute, § 34–1–120, W.S.1977. This statute appropriately has been identified as a race-notice statute. It speaks for itself (*Frank v. Hicks*, 4 Wyo. 502, 35 P. 475, reh'g denied, 35 P. 1025 (1894)), and it means that a subsequent deed, recorded first, is given priority over the prior deed to the same property recorded last. *Hawkins v. Stoffers*, 40 Wyo. 226, 276 P. 452, reh'g denied, 40 Wyo. 245, 278 P. 76 (1929); *Dame v. Mileski*, 80 Wyo. 156, 340 P.2d 205 (1959). It protects subsequent purchasers who first record their deed.

■ It is the primary purpose of a recording statute such as ours to secure certainty of title by publicity of other conveyances, and a grantee should seasonably record the instrument conveying property to him in order to effectuate this purpose. *Hawkins v. Stoffers*, supra; *Frank v. Hicks*, supra.

■ The predecessors in interest of the Lettzes and Wilsons delayed the recording of their conveyance for some 38 months. Since they did not seasonably record, they cannot claim the protection of the recording statute. Those predecessors in interest, the Hammonds, had an opportunity to avoid the loss which now must be attributed to their grantees by seasonably recording; and, since they failed to take advantage of that opportunity, they and their subsequent grantees must bear the loss attributable to the shortfall in this instance. Absent presentation and argument of alternative grounds for resolution, we hold that in an instance in which a tract of land is conveyed by separate deeds to several grantees and later is discovered to contain less land than was conveyed, the impact of the loss must fall upon a dilatory grantee who fails to record an earlier deed. This holding is consistent with a policy espoused by our recording statute, and does effectuate the purpose of that statute. Responding to the issue raised by the parties, this resolution identifies the last grantee as the one who last records a deed.

The judgment of the trial court is affirmed.

CARDINE, Justice, dissenting, with whom ROSE, Justice, Retired, joins.

I dissent.

In this case there are four deeds which are relevant.

The only conflict in the four deeds is between the Trapp and Ballhorn deeds as shown by the crosshatched area above. The Trapp deed states that it is a conveyance of land beginning 643 feet west of the SE corner of tract 19 and includes 297.45 feet along the south border west from the beginning point. This in no way conflicts with the Hammond or Condos deeds because those deeds grant a total of 643 feet of the south border, west from the SE corner. The Trapp deed does conflict with the Ballhorn deed. The Ballhorn deed is measured from the NW corner of the tract (contrary to the other deeds) and conveys 288.8 feet of the south border from a road bordering on the west of tract 19. Because the tract contains 28.8 feet less on the south border than was assumed, the Trapp and Ballhorn deeds attempt to convey the same strip of land, i.e. the strip between 911.6 and 940.4 feet from the SE corner.

As between the Ballhorns and the Trapps, the Ballhorns' conveyance was first made and first recorded; it should prevail, and the west 28.8 feet of the Trapp

conveyance should be held void and pass no title to the Trapps.

This result, based on the conflicting deeds, obviates any need for us to rely on the "last grantee rule" argued by the parties. We are at liberty to adopt this approach, which the parties do not argue, although we are not required to do so. *State Highway Commission v. Triangle Development Company*, Wyo., 371 P.2d 408 (1962). As Chief Justice Blume stated in *Chicago & N.W. Ry. Co. v. City of Riverton*, 70 Wyo. 119, 247 P.2d 660, 663 (1952),

> "were we to limit our decisions strictly and literally to the arguments advanced by counsel in a case, the law in this jurisdiction would be in a sorry state." "There is no reason to keep secret the proper law applicable to a case just because overlooked." *Meuse-Rhine-Ijssel Cattle Breeders of Canada LTD v. Y-Tex Corporation*, Wyo., 590 P.2d 1306, 1309 (1979).

Even if the majority and the parties were correct that the "last grantee rule" applies, the Trapps, the last to purchase, should be considered the last grantees and should suffer the loss. The majority places the burden of the shortage upon the successors to the Hammonds by identifying the Hammonds as the last grantees under the recording statute, § 34–1–120, W.S.1977. But the recording statute should not have been applied as between the Trapps and Condoses or the Trapps and Hammonds. Section 34–1–120, W.S.1977, provides:

> "Every conveyance of real estate within this state, hereafter made, which shall not be recorded as required by law, shall be void, as against any subsequent purchaser or purchasers in good faith and for a valuable consideration of *the same real estate or any portion thereof*, whose conveyance shall be first duly recorded." (Emphasis added.)

The statute only voids conveyances of "the same real estate or any portion thereof" as against subsequent purchasers who record first. By placing the burden upon the Hammonds, the court has used the statute to void a portion of a conveyance which was never one of a number of conveyances of "the same real estate." The strip of land between the Trapps and Ballhorns, described above, is the only real estate which was conveyed twice. As to this strip, the Trapps were actually subsequent purchasers who recorded their deed *after* the Ballhorns (i.e. prior purchasers of the same strip).

The opinion of the court states that placing the shortage upon the Hammonds' successors is fair because the Hammonds' failure to record their deed prevented the other three grantees from determining that there was insufficient land to satisfy all conveyances. This opinion is incorrect. The Trapp deed describes a beginning point 643 feet west of the SE corner and encompasses another 297.45 feet further west. Recording the two deeds east of the Trapp conveyance would have told them no more than they already knew, i.e. that their property began 643 feet west of the SE corner and proceeded west another 297.45 feet. A review of these deeds would have disclosed no conflict or conveyance of the same real estate. On the other hand, if the Trapps had reviewed the Ballhorn deed and had commissioned a survey of the tract, they would have discovered that the Ballhorn deed conflicted with their deed and involved a conveyance of the same parcel of land. The Trapps' surveyor would have begun his measurements at the SE and NW corners of the entire tract, the starting points of the descriptions in the deeds, and he would have caught the error.

While the majority concedes that the recording act, by its terms, does not fix the priorities between the Trapps' and the Hammonds' successors, the majority nevertheless concludes that the policies of the recording act are advanced if the Hammonds' successors are punished. One of the policies offered by the majority is "to avoid losses such as this." But this policy would not be advanced in this case because everyone concedes that a timely recording by the Hammonds could not have changed

the Trapps' decision to purchase and therefore would not have avoided this loss.

Another policy offered by the majority is "to protect those who record first." One must ask, however, who is this "first" recorder protected from? The recording act is merely intended to

> "impart to a subsequent purchaser notice of instruments which affect the title to a *specific tract of land* in which the subsequent purchaser is interested at the time." (Emphasis by the Kansas Supreme Court.) Luthi v. Evans, 223 Kan. 622, 576 P.2d 1064, 1070 (1978).

> "[A]s to priority between *competing* interests to the *same property* from the same grantor, the constructive notice afforded by the deed's recordation is sufficient to give that deed priority over any *competing* but after-acquired interests." (Emphasis added.) 6A R. Powell, Powell on Real Property ¶ 904[3], at 82–13 to 82–14 (1984).

Those who record first are only to be protected from others who have acquired a competing interest in the *same land.*

Finally, the majority states that the recording act is designed to establish certainty in records and that this purpose is advanced by the holding in this case. While certainty in records is a purpose of the act, we should not create extra-statutory sanctions to advance that purpose. Our recording act creates a forfeiture sanction which is to be applied only in limited circumstances. Until a conflicting transaction has occurred involving the same piece of land, the grantee has perfectly valid title and should not be forced to relinquish any of his property even if he does not immediately record.

> "Notwithstanding the important benefits achieved by recordation, title to real property may be transferred by delivery of a deed without recording." 6A Powell, supra, at 82–14.

The act does not force a purchaser to forfeit some of his tract just because he records late, and we should not create such a novel rule. Even under the majority's "last grantee" rule, the recording act should not be applied. The Trapps were the last to purchase as against all the other parties and should lose under the theory of "first in time, first in right."

I would reverse.